UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL TRADE COMMISSION,

       Plaintiff,

      v.

NATIONAL UROLOGICAL GROUP,
INC., et al.,

       Defendants.

CIVIL ACTION

NO. 1:04-CV-3294-CAP

**O R D E R**

This matter is before the court on the following motions:

1.    The Federal Trade Commission's (FTC) Motion for an order to show cause why Hi-Tech Pharmaceuticals, Jared Wheat, and Stephen Smith (the Contempt Defendants) should not be held in contempt [Doc. No. 332];

2.    The Contempt Defendants' motion for a status conference and entry of scheduling order [Doc. No. 351];

3.    The FTC's motion for a protective order quashing the contempt defendants' discovery requests [Doc. No. 367];

4.    The FTC's motion for leave to file a supplemental reply in support of its motion for a show cause order [Doc. No. 374]; and

5.    The FTC's motion for an order to show cause why Dr. Terrill Mark Wright should not be held in contempt [Doc. No. 377].

As an initial matter, the FTC's motion for leave to file a supplemental reply [Doc. No. 374] is unopposed; thus, that motion is GRANTED. See LR 7.1(B), NDGa.

## I.   Introduction

In 2004, the FTC filed this action against the defendants alleging they violated Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, by making false and unsubstantiated claims in connection with their advertising and sale of various dietary supplements. On June 4, 2008, the court granted the FTC's motion for summary judgment. See FTC v. Nat'l Urological Group, Inc., 645 F. Supp. 2d 1167 (N.D. Ga. 2008), aff'd, 356 F. App'x 368 (11th Cir. 2009), cert. denied, 131 S. Ct. 505 (2010). On December 16, 2008, the court entered final judgment against the defendants, including permanently enjoining them from several activities related to their previous violations of the FTC Act [Doc. Nos. 229, 230].

At issue now are several of those prohibited activities. The FTC's motion for a show cause order alleges the Contempt Defendants' conduct violates the following provisions of the final judgment order: (1) Section II, prohibiting the Contempt Defendants from claiming their products "cause[] rapid or substantial loss of weight or fat," or "affect[] human metabolism, appetite, or body fat," unless those claims are substantiated by "competent and

2

reliable scientific evidence"; (2) Section VII, prohibiting the Contempt Defendants from making representations regarding "comparative benefits, performance, safety, or efficacy" for covered products unless such representations are substantiated by "competent and reliable scientific evidence"; and (3) Section VI, requiring the Contempt Defendants to "make clearly and prominently" a specified warning when they make efficacy claims about any covered product containing yohimbine. See [Doc. No. 230, at 12-13, 15-17]; [Doc. No. 332-1, at 20-25]. The FTC also claims Dr. Wright violated Section II of the judgment order against him, prohibiting him from making any representations regarding "any weight loss product" that claim such product "causes rapid or substantial loss of weight or fat" or "affects human metabolism, appetite, or body fat" unless such representation is substantiated by "competent and reliable scientific evidence." See [Doc. No. 229, at 7-8]; [Doc. No. 377-1, at 12-14]. The FTC filed voluminous exhibits in support of its motions.

After the FTC moved for the show cause order in November 2011, the Contempt Defendants filed their response [Doc. No. 346]. In its reply (and other briefs on other motions), the FTC argues the Contempt Defendants failed to create a genuine question of material fact, and therefore the court should hold the defendants in contempt on the papers without a hearing. All the defendants object

3

to this request and demand a hearing. See, e.g., [Doc. Nos. 350, 380].

**II.  FTC's Motions for Show Cause Orders**

    **A. Legal Standard**

    In Mercer v. Mitchell, the court outlined the "typical (although by no means exclusive) contempt proceeding." 908 F.2d 763, 767 (11th Cir. 1990). To initiate a contempt proceeding, the plaintiff:

> requests the court to order the defendant to show cause why he should not be held in contempt and sanctioned until he complies. If the court finds that the conduct as alleged would violate the prior order, it enters an order requiring the defendant to show cause why he should not be held in contempt and conducts a hearing on the matter.

Id. at 768 (citation omitted). But the due process requirements for civil contempt proceedings are "flexible, varying with the circumstances of each case," and the process described is not **necessary** if there are no disputed questions of fact. Id. at 769 n.11 ("[W]hen there are no disputed factual matters that require an evidentiary hearing, the court might properly dispense with the hearing prior to finding the defendant in contempt and sanctioning him."); see also Nat'l Union Fire Ins. Co. v. Olympia Holding Corp., 140 F. App'x 860, 864-65 (11th Cir. 2005) (holding district court did not abuse its discretion by holding party in contempt without evidentiary hearing because there were "no material issues

4

of fact" where the contempt defendants had "challenge[d] the interpretation of the facts but not the existence of the facts").

So, the initial analysis of a motion to show cause why a defendant should not be held in contempt is somewhat like that of a Rule 12(b)(6) motion: The court assumes the facts as alleged (in the motion for show cause) are true and asks whether those facts state a violation of the permanent injunction in the final judgment.

**B.  Analysis**

The facts in the FTC's motions for show cause orders state violations of the permanent injunctions against the defendants. According to the FTC, the Contempt Defendants' advertising and product packaging make unsubstantiated claims that their products cause rapid or substantial fat or weight loss, affect metabolism and decrease consumers' appetites, and the yohimbine warning does not appear as directed by the judgment order. Further, the FTC alleges Dr. Wright's endorsement of the weight-loss dietary supplement Fastin contains unsubstantiated claims that the product will cause rapid or substantial weight or fat loss. The exhibits and attachments included with the FTC's motions support these allegations. Assuming the facts stated are true, this conduct would violate the permanent injunctions against these defendants. Thus,

under the "typical" civil contempt process, the court should grant the FTC's motion for a show cause order.

**1.   Issues Relevant to Scope of Show Cause Response**

In their response to the motion for a show cause order, the Contempt Defendants make various arguments as to why the show cause order should not issue and why their conduct did not violate the order.[1] Most of these arguments are either unpersuasive or inapplicable at this point in the process. A discussion of a few of these issues is required now because they are relevant to direct the parties' arguments and evidence in response to the show cause order.

First, the Contempt Defendants argue all the claims made--and they dispute that they made all the claims the FTC alleges--were non-actionable "puffery", which cannot form the basis of a violation of the final judgment. See [Doc. No. 346, at 13-14]. However, in the order on summary judgment, the court previously "caution[ed] the defendants" that injunctive relief may be broader than the precise violations alleged. Nat'l Urological Group, Inc., 645 F. Supp. 2d at 1215. The court is not persuaded by the single

_____

[1] Dr. Wright filed a "Statement in Response" to the FTC's motion for a show cause order [Doc. No. 380]. In his statement, he chose to "withhold offering a substantive response" to the motion until the court actually issues such an order. Id. at 4. Thus, the court considers the FTC's motion for an order to show cause with regard to Dr. Wright unopposed. See LR 7.1(B), NDGa.

paragraph the Contempt Defendants devoted to this argument that the court cannot not hold them in contempt where an advertisement as a whole makes a claim that would violate the broad terms of the judgment order, even if the advertisements are "riddled with puffery." Id. at 1206.

Second, the Contempt Defendants argue any claims they made are substantiated by "competent and reliable scientific evidence" as required by the judgment order. It is clear from the substance of the parties' various briefs that the defendants (possibly including Dr. Wright) intend to re-litigate an already decided question. The final judgment orders provide that the claims at issue must be substantiated by "competent and reliable scientific evidence." That term is defined in the judgment orders, [Doc. Nos. 230, at 5; 229, at 4], and the same term and definition were at issue in the motions for summary judgment: the court "adopt[ed] [the FTC's] definition" and concluded "what constitutes competent and reliable scientific evidence in this case is a question of fact for expert interpretation." Nat'l Urological Group, Inc., 645 F. Supp. 2d at 1190.

In its summary judgment motion, the FTC had "presented expert testimony to establish what constitutes 'competent and reliable scientific evidence'" for claims regarding safety and efficacy of dietary supplements:

> The FTC's expert, Dr. Aronne, stated that the type of evidence required to substantiate **weight loss claims for any product, including a dietary supplement**, is appropriately analyzed results of independent, well-designed, well-conducted, randomized, double-blind, placebo-controlled clinical trials, given at the recommended dosage involving an appropriate sample population in which reliable data on appropriate end points are collected over an appropriate period of time. Dr. Aronne also stated that to scientifically establish the truth of a claim that a product such as Thermalean or Lipodrene has been clinically proven to be efficacious or safe, a reliable clinical study showing that outcome must have been conducted on the product itself. Dr. Aronne further clarified that anecdotal evidence (i.e. reports from patients) are insufficient to prove the efficacy of a product.

Id. at 1202 (emphasis added). The defendants did not counter Dr. Aronne's expert testimony. "Accordingly, the court conclude[d] that there [was] no issue of fact regarding the requisite levels of substantiation, and [relied] upon the standards set forth by Dr. Aronne," which "establish that some form of clinical trial must have been conducted **on the product** itself or an exact duplicate of the product to substantiate the defendants' claims regarding the overall product." Id. at 1202-03 (emphasis added). Thus, because the defendants had admitted their products (instead of the ingredients) had not been tested, the court found the claims were unsubstantiated. Id.

The fact question of what constitutes "competent and reliable scientific evidence" to substantiate a weight loss claim for any product is part of the law of the case for this matter; it is not

subject to re-litigation. See United States v. Rylander, 460 U.S. 752, 756 (1983) (stating the "long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy"). The Contempt Defendants try to argue this determination does not apply now because the court previously stated the standard was "context specific"-- varying by advertising claim--and we are now dealing with new claims and products. Defs.' Reply Br. 10 [Doc. No. 386]. However, Dr. Aronne's report was broad enough to establish what constituted substantiation of weight loss claims "for any product, including dietary supplements." Further, the "lack of reasonable basis claims" at issue then included claims related to fat loss, affecting metabolism and appetite. See, e.g., Nat'l Urological Group, Inc., 645 F. Supp. 2d at 1192 ("LORB Claim 4: Thermalean inhibits the absorption of fat, suppresses appetite, and safely increases metabolism without dangerous side effects[.]"). This is the same "context" from which the FTC's present allegations arise. Thus, the court's conclusion that there was "no issue of fact regarding the requisite levels of substantiation," and the court's application of that fact to establish "that some form of clinical trial must have been conducted on the product itself or an exact duplicate of the product" encompass all the lack of substantiation

9

claims at issue in the FTC's motions for a show cause order. The only evidence that will be relevant to show whether the defendants "possess[ed] and rel[ied] upon competent and reliable scientific evidence" to substantiate any representation is the kind of evidence previously described by Dr. Aronne and previously adopted by the court.

Third, the Contempt Defendants argue they made a good faith attempt to comply with the permanent injunction. The court is inclined to agree with the FTC that good faith is irrelevant to the question of whether the defendants should be held in contempt. The defendants in FTC v. Leshin similarly argued "they made a 'good faith effort' to comply with [an] injunction, . . . and that their substantial compliance made the contempt order unwarranted." 618 F.3d 1221, 1232 (11th Cir. 2010). The Eleventh Circuit reasoned:

> The Supreme Court has made clear that the absence of willfulness is not a defense to a charge of civil contempt. The decisions of our Court and our predecessor court have held that substantial, diligent, or good faith efforts are not enough; the only issue is compliance. We do not focus "on the subjective beliefs or intent of the alleged contemners in complying with the order, but whether in fact their conduct complied with the order at issue."

Id. at 1232–33 (citations omitted); see also id. ("We are not concerned with excusable neglect but with whether the contempt defendants complied with the injunction."). But see Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) ("Conduct that

10

evinces substantial, but not complete, compliance with the court order **may** be excused if it was made as part of a good faith effort at compliance." (emphasis added)). Thus, on the question of whether the defendants can show cause why they should not be held in contempt, "the only issue is compliance." Leshin, 618 F.3d at 1232. However, the court also agrees with the Contempt Defendants' argument that evidence of good faith or substantial compliance may be relevant to what sanction, if any, should ultimately be imposed.

Finally, the Contempt Defendants' reply brief in support of their motion for a status conference and scheduling order erroneously implies the FTC must introduce "consumer survey evidence" to support an interpretation of the advertisements to make the claims alleged. [Doc. No. 368, at 9]. The court discussed this situation in the order on summary judgment: "In this case, the FTC has not presented any evidence of what claims consumers perceived the advertisements to make; accordingly, any claims that the FTC contends that the advertisements make must be clear and conspicuous from the face of the advertisements." Nat'l Urological Group, Inc., 645 F. Supp. 2d at 1189; see also id. at 1189 n.12 (stating consumer survey evidence is "only necessary when the asserted claims fall on the 'barely discernable' side of the continuum"). The court is again well-equipped to discern express

11

claims or clear and conspicuous implied claims from the face of the advertisements.[2]

## III. Contempt Defendants' Motion for Status Conference and Scheduling Order and FTC's Motion for Protective Order

The FTC also argues in briefs on the various motions that the Contempt Defendants have created no material question of fact as to the alleged violations, so no evidentiary hearing is necessary; the court should simply hold the defendants in contempt based on the motions. The Contempt Defendants assert they have raised (at least) five questions of fact relevant to whether they should be held in contempt: (1) whether the challenged advertisements were puffery, (2) whether the Contempt Defendants actually made the claims alleged by the FTC, (3) whether any claims made are substantiated by competent and reliable scientific evidence, (4) whether the yohimbine warnings they provided were adequate, and (5) whether good faith precludes a finding of contempt or mitigates a possible

---

[2] For example, the FTC contends the Contempt Defendants claim their products cause rapid or substantial weight or fat loss. The Contempt Defendants statement that "[t]he actual claims do not say this" and "[n]one of [their] claims promise consumers that the products cause rapid and substantial weight loss," [Doc. No. 368, at 9]. However, this statement is blatantly false, based on the FTC's exhibits, because at least **some** of the products make express claims to cause rapid fat loss. See, e.g., FTC Exhibit 3, Attachment 18 (prominently displaying text "RAPID FAT LOSS" and "RAPID FAT LOSS CATALYST" on the front and side of Fastin packaging and warning consumers, "DO NOT CONSUME UNLESS RAPID FAT AND WEIGHT LOSS ARE YOUR DESIRED RESULT").

sanction.[3] Thus, the Contempt Defendants have moved for a status conference and scheduling order for the contempt proceedings. The Contempt Defendants also ask for limited discovery of several items. <u>See</u> [Doc. No. 368, at 6-8].

Regardless of whether the Contempt Defendants have "created" a question of material fact in their response to the motion for show cause order, the court will not hold the defendants in contempt merely on the papers presented so far. The better procedure, as suggested by <u>Mercer</u>, is to issue an order requiring the defendants to show cause why they should not be held in contempt for the alleged violations of the judgment order. To facilitate the defendants' response, the court will require the FTC to file a specific, numbered list of factual allegations the FTC contends the defendants committed in contempt of the court's order (not unlike a complaint). After consideration by the court at a status conference, the court will set a date for the defendants to respond.

Given this initial outline of contempt proceedings, the court will consider permitting the parties to conduct limited discovery. Accordingly, the court GRANTS the Contempt Defendants' motion for a status conference and provisionally DENIES the FTC's motion for

---

[3] As discussed above, the court has answered the third and fifth questions; they are no longer in dispute.

13

a protective order. The court will conduct a status conference on
May 31, 2012, at 10:00 AM. The parties shall prepare and file the
following items on or before May 24, 2012, for review at the status
conference:

1.   The FTC's specific, numbered list of factual allegations the
     FTC contends the defendants committed in contempt of the
     court's order--each allegation referencing a specific section
     or subsection of the judgment order;

2.   A list of specific matters that either party believes
     discovery should be conducted by (a) deposition, (b)
     interrogatory, or (c) requests for admission;

3.   An estimated length of a hearing on the show cause order,
     should such hearing be necessary;

4.   The terms of proposed sanctions the FTC is seeking specific to
     each defendant.[4]

The scope of the limited discovery will be settled at the status
conference.

---

[4] The FTC's motion for show cause order asked for both
"coercive incarceration" and "the full amount consumers paid for
Contempt Defendants' products" as sanction. The court seeks more
information on how these sanctions would coerce any contemnors in
this case into compliance and how they might purge themselves of
such contempt.

**IV.  Conclusion**

The FTC's motions for an order directing defendants Hi-Tech Pharmaceuticals, Jared Wheat, Stephen Smith to show cause why they should not be held in contempt, for leave to file a supplemental reply, and for an order directing defendant Dr. Terrill Mark Wright to show cause why he should not be held in contempt [Doc. Nos. 332, 374, 377] are GRANTED.

The Contempt Defendants' motion for a status conference and entry of a scheduling order is GRANTED [Doc. No. 351]. The court will conduct a status conference on May 31, 2012, at 10:00 AM in courtroom 2307. The parties are ORDERED to file the specified documents on or before May 24, 2012. The court will issue the show cause order after the status conference.

The FTC's motion for a protective order is provisionally DENIED [Doc. No. 367], pending settling the scope of limited discovery at the status conference.

SO ORDERED, this __11th__ day of May, 2012.

/s/Charles A. Pannell, JR.
CHARLES A. PANNELL, JR.
United States District Judge

15