```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF GEORGIA
                        ATLANTA DIVISION
```

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 1:04-CV-3294-CAP |
| NATIONAL UROLOGICAL GROUP, INC., et al., | |
| Defendants. | |

## **O R D E R**

This matter is before the court on the motion for reconsideration by contempt defendants Hi-Tech Pharmaceuticals, Inc. (Hi-Tech), Jared Wheat, and Stephen Smith [Doc. No. 396][1] of the court's May 11, 2012 order [Doc. No. 390] (the May 11 Order). The motion is DENIED because the Pom Wonderful decision the defendants cite is, as they concede, not an intervening change in controlling law and because there was no clear error of law. Rather, the defendants' arguments as to the supposed clear errors are generally repetitive of arguments they already raised and the court already rejected.

The court also briefly addresses Arthur W. Leach's motion to strike [Doc. No. 411] and the FTC's motions to alter or amend the judgment [Doc. Nos. 333, 378]. Those motions are also DENIED.

---

[1] Contempt defendant Dr. Mark Wright joins in support of the motion [Doc. No. 397].

## I. Standard of Review

Reconsideration of a court's order is an "extraordinary remedy" to be "employed sparingly." McCorvey v. Smith, No. 1:08-0151-WS-C, 2009 WL 2176344, at *2 (S.D. Ala. July 15, 2009) (quoting Gougler v. Sirius Prods., Inc., 370 F. Supp. 2d 1185, 1189 (S.D. Ala. 2005)). As the defendants set out in their own motion, reconsideration is justified when there is (1) newly discovered evidence, (2) an intervening development or change in controlling law, or (3) a need to correct a clear error of law or fact. Mot. to Reconsider 3 [Doc. No. 396] (citing Bryan v. Murphy, 246 F. Supp. 2d 1256, 1258-59 (N.D. Ga. 2003); Instituto de Prevision Militar v. Lehman Bros., 485 F. Supp. 2d 1340, 1343 (S.D. Fla. 2007)). Further, a motion for reconsideration is an inappropriate vehicle to present arguments already made and rejected by the district court, "repackage familiar arguments to test whether the court will change its mind," or try to "show the court how it could have done better." See Romala Stone, Inc. v. Home Depot USA, Inc., No. 1:04-CV-2307-RWS, 2009 WL 1405058, at *2 (N.D. Ga. May 18, 2009) (quoting Bryan, 246 F. Supp. 2d at 1259).

## II. Analysis

The defendants' motion asks the court to reconsider the portion of the May 11 Order that addressed what evidence will be relevant to show whether the defendants possessed and relied upon

"competent and reliable scientific evidence" to substantiate the claims at issue in the present contempt proceedings. The defendants do not suggest "newly discovered evidence" justifies reconsideration. Rather, they move for reconsideration because (1) the administrative decision in POM Wonderful LLC,[2] "provides strong persuasive authority for the [c]ourt to reconsider its decision," and (2) the court clearly erred by concluding the fact question of what constitutes "competent and reliable scientific evidence" had been conclusively determined and, therefore, the defendants would not be able to re-litigate this issue during the contempt proceedings. The defendants suggest the court made three clear errors of law in its order: (1) Dr. Arrone's definition of competent and reliable scientific evidence was not incorporated into the final judgment and injunction, (2) the standard as applied to the permanent injunction is beyond the power of the FTC and fundamentally unfair to the defendants, and (3) the May 11 Order unduly restricts contempt defendants' evidence of good faith.

The court finds no basis to reconsider the May 11 Order or the conclusions therein. Aside from the discussion of the non-controlling administrative decision Pom Wonderful, the defendants

---

[2] No. 9344, 2012 WL 2340406, 2012 FTC LEXIS 106 (F.T.C. May 17, 2012), available at http://www.ftc.gov/os/adjpro/d9344/120521pomdecision.pdf

have repackaged their previous arguments in new form. The motion can therefore be denied for this reason alone. But the court also concludes the defendants have largely misunderstood the rationale of the May 11 Order, so this order will expand on the court's reasoning to show why it was not clear error to preclude relitigation of the "competent and reliable scientific evidence" issue.

### A.   There is No Intervening Change in Controlling Law

As an initial matter, even the legal standard the defendants cite requires an intervening change in **controlling** law in order to make a motion for reconsideration absolutely necessary. See Mot. to Reconsider 3 [Doc. No. 396] (citing Bryan, 246 F. Supp. 2d at 1258-59). The intervening authority the defendants introduce is an initial decision by an administrative law judge (ALJ) in an administrative proceeding brought by the FTC against Pom Wonderful. In the motion for reconsideration, the defendants, rightly, never suggest the Pom Wonderful decision is controlling. Instead they repeatedly hold up Pom Wonderful as "strong persuasive authority" for this court to consider. E.g. Mot. to Reconsider 2, 4, 8 [Doc. No. 396]. The defendants point to no intervening change in controlling law, so reconsideration is not warranted on the basis of the Pom Wonderful decision.

Even if the court were to consider the ALJ decision, it does not dictate any change to the court's holdings. As the defendants described the decision:

> According to the ALJ, neither the FTC Act nor applicable case law imposes a requirement of randomized, double-blind, placebo-controlled clinical trials to substantiate all health-related efficacy claims made in the advertising of dietary supplements. Rather, the ALJ found that, consistent with this Court's prior holdings, the appropriate level of substantiation was a "question of fact to be determined based upon the expert testimony adduced at trial."

Mot. to Reconsider 2, 4, 8 [Doc. No. 396] (citations omitted). As noted by the defendants, this court has not said the law imposes a **general** requirement to substantiate claims in this matter. Rather, as described more fully in Part II.C below, this court held (on summary judgment) there was no question of fact as to what constitutes competent and reliable scientific evidence, so the defendants are precluded from re-litigating that fact question in these contempt proceedings. Pom Wonderful does not provide a basis to reconsider the May 11 Order.

### B. Clear Error of Law

Each of the three purported errors the defendants argue the court made are merely repackaged versions of arguments previously raised by them and rejected by the court.

### 1.    Dr. Arrone's Interpretation

First, the defendants complain that Dr. Arrone's testimony regarding what constitutes "competent and reliable scientific evidence" cannot be applied to that term in the injunction. They argue that because an injunction must give notice of what it forbids, no ordinary person would read the ambiguous definition of competent and reliable scientific evidence[3] in the way Dr. Arrone has.[4] "[T]he question of what constitutes 'competent and reliable scientific evidence' under the definition found in the Injunction is where the debate lies. . . . [And t]he Contempt Defendants are entitled to the benefit of any ambiguities in the Injunction." Mot. to Reconsider 12-13 [Doc. No. 396]; see also id. at 13 ("The Court's summary judgment decision does not cure the ambiguity contained in the injunction."). Further, because the claims at issue now are supposedly different than the claims at issue then, Dr. Arrone's interpretation should not apply. Id. at 13-14. The

---

[3] The permanent injunction defines this term as "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that ha[ve] been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results." [Doc. No. 230, at 5].

[4] As described in the May 11 Order, Dr. Arrone's interpretation of this definition requires a double-blind, clinical trial on the product itself to substantiate weight loss claims. See May 11 Order 7-8 [Doc. No. 390].

defendants state in their reply brief, attempting to counter the claim that this was a repeated argument, "Even a **cursory review** of the motion [to reconsider] reveals that the Contempt Defendants' arguments center upon the ambiguous nature of the Court's injunction. Here, **for the first time**, the Contempt Defendants assert that the Court's May 11, 2012 order relies upon matters outside the four corners of the injunction . . . ." Reply Br. 8 [Doc. No. 408] (emphasis added).

The words "cursory" and "first" do not mean what the defendants appear to think they mean, because this is almost exactly the same argument they made before the May 11 Order. For example, in the opposition to the motion for show cause, the defendants argued that the injunction contains a different, less-restrictive definition than the one adopted from Dr. Arrone's testimony in the summary judgment order, and "any ambiguities in the order to be enforced are to be resolved in favor of the Contempt Defendants." Defs.' Br. in Opp'n 15-16 [Doc. No. 356, at 21-22]. Further, they have already argued that "expert opinion on what is the appropriate level of substantiation for these new claims may differ, as the Court noted, it is context and claim specific." Id. at 17-18; see also [Doc. No. 368, at 12-13].

The only new-ish portion of this argument is that the injunction must inform the defendants "precisely what the court

intends to forbid," so that they should not be "required to look to another order . . . to divine the meaning of the terms" of the injunction. They point to Hughey v. JMS Development Corp., in which the Eleventh Circuit stated, "A person enjoined by court order should only be required to look within the four corners of the injunction to determine what he must do or refrain from doing." 78 F.3d 1523, 1532 n.12 (11th Cir. 1996) (vacating injunction from discharging storm water "in violation of the Clean Water Act" because it was an impermissible "obey the law" injunction that was not "an operative command capable of enforcement"). More recently, in a securities enforcement action, the Eleventh Circuit recognized, "[G]iven Congress's authorization to enjoin violations of the Exchange Act and the fact that this is a civil enforcement action brought by the SEC, less particularity [in the terms of an injunction] is required in this context." SEC v. Goble, 682 F.3d 934, 952 (11th Cir. 2012) ("[W]here the public interest is involved, the court's equitable power has a 'broader and more flexible character.'" (quoting Commodity Futures Trading Comm'n v. Levy, 541 F.3d 1102, 1114 (11th Cir. 2008))). Ultimately, the Goble court invalidated restraints against violating two sections of the Exchange Act and their accompanying regulations because they did not "specifically describe the acts addressed by the injunction. And, without a compendious knowledge of the codes, [the defendant]

ha[d] no way of understanding his obligations under the injunction." Id.

Here, the language is not nearly so broad as the kind of "obey the law" injunctions of Hughey and Goble. Instead, we have a specific term of the injunction with a specific definition that was specifically interpreted in an earlier stage of the litigation between these parties. The defendants did not need to search and interpret vast swaths of the law to understand the obligations under the injunction; they only needed to look to the final judgment and the conclusively determined issues in this case. The law requires "fair notice" of what conduct risks contempt. Goble, 682 F.3d at 951. The evidence shows Mr. Wheat had such notice that the advertisements at issue now might risk contempt, some (though not all) of the legal advice he received confirmed this risk, and he made a business decision to accept that risk. See [Doc. Nos. 408-1; 366-1, at 17]].[5] Accordingly, although the answer to what type of evidence constitutes competent and reliable scientific evidence technically lies "outside the four corners" of the injunction, it was not a clear error of law to preclude re-litigation of it.

---

[5] Of course, the court does not conclude at this time the defendants actually **did** violate the injunction.

### 2. Beyond Power of FTC and "Fundamentally Unfair"

Next, the defendants argue the May 11 Order precluding re-litigation of what constitutes competent and reliable scientific evidence is "fundamentally unfair" to the defendants because it exceeds the scope of the injunction, exceeds the scope of the FTC's authority, and places the defendants at a competitive disadvantage relative to other dietary supplement producers. The first argument is essentially a repeat of already-rejected bases for reconsideration. Mot. to Reconsider 16 [Doc. No. 396] ("[A]s argued above, this interpretation of the Injunction stretches it beyond its language to the detriment of the Contempt Defendants."). The second argument, that the FTC cannot impose a requirement as interpreted by the court, is an exact duplicate of arguments already raised in opposition to the motion for show cause, including citation of the same statutes and cases for the same propositions. Compare id. at 16-18, with Defs.' Br. in Opp'n 18-21 [Doc. No. 346, at 24-27]. Finally, the defendants fail to argue how the competitive disadvantage they might bear creates "a clear error of law or fact" that necessitates reconsideration. Instead, the defendants simply make clear they think the court "could have done it better." Bryan, 246 F. Supp. 2d at 1259. Accordingly, this trio of arguments mostly repackages old wine in new bottles and fails to show a clear error of law to warrant reconsideration.

### 3. The May 11 Order Does Not Unduly Restrict Evidence of Good Faith

The final grounds the defendants raise for reconsideration is that the court has unduly restricted their evidence of good faith. They state, "The Court's May 11, 2012 Order correctly holds that evidence of the Contempt Defendants' good faith or substantial compliance **is** relevant as to what sanction, if any, should ultimately be imposed in these proceedings." Mot. to Reconsider 19 [Doc. No. 396] (emphasis added). They argue this holding conflicts with the portion of the order limiting expert evidence regarding the defendants' compliance. Id. at 20-21. However, the defendants misread the court's holding. They have quoted the court's order almost word-for-word, but they replaced the phrase "may be" with "is." Compare id. at 19, with May 11 Order 11 [Doc. No. 390] ("[T]he court also agrees with the Contempt Defendants' argument that evidence of good faith or substantial compliance **may be** relevant to what sanction, if any, should ultimately be imposed." (emphasis added)).

The court purposefully chose this open-ended language in the May 11 Order. See Bryan A. Garner, A Dictionary of Modern Legal Usage 552 (2d ed. 2001) (defining "may" as "has discretion to; is permitted to," or "possibly will," and referring to a third definition, "shall," as "a lexical perversion"). Given the

11

contentious nature of this litigation, the goal of that portion of the order was "to direct the parties' arguments and evidence in response to the show cause order" in light of the wildly divergent legal positions taken by both sides. May 11 Order 6 [Doc. No. 390]. Thus, the court explicitly excluded good faith from the issue of compliance with the injunction, while leaving open the relevance of good faith to the sanction imposed. Id. at 10-11.[6]

In any case, even if good faith is relevant to the sanction imposed, limiting the expert evidence as to what constitutes competent and reliable scientific evidence does not unduly restrict the defendants' evidence of good faith. They could still present other evidence of their attempts to comply with the injunction, some of which is identified in the motion for reconsideration. The court does not see how it has created a clear error of law by excluding expert testimony as it has, while not foreclosing other avenues of evidence.

---

[6] At the status conference on May 31, 2012, counsel for the FTC, argued that at most, good faith is only relevant to the coercive sanction of incarceration, not to the compensatory sanctions the FTC also seeks. Status Conference Tr. 13 [Doc. No. 400]; see also id. at 27-28 (presumably citing McComb v. Jacksonville Paper Co., 336 U.S. 187 (1949)). The court would not be surprised to see further discussion of the relevance of the defendants' good faith as these contempt proceedings progress. Of course, if the FTC's position is correct, and good faith is only relevant to whether the defendants should be incarcerated to coerce their compliance, then the FTC could take that issue completely off the table by seeking **only** compensatory sanctions.

### C. Clarification of the May 11 Order

Finally, the court observes that the defendants' motion for reconsideration often misses the mark as to the reason for the court's holding barring relitigation of the competent and reliable scientific evidence issue. For example, they argue the court "conflates" its summary judgment decision with the injunction, Mot. to Reconsider 10 [Doc. No. 396], and that the May 11 Order and the summary judgment order sets the substantiation standard too high compared to the Pom Wonderful ALJ decision, id. at 6-10. But the defendants never directly challenge the basis for the court's conclusion that they were barred from "re-litigat[ing] an already decided question." See May 11 Order 7-9 [Doc. No. 390]. Therefore, the court takes this opportunity to clarify the rationale of that order.

In its initial motion for a show cause order, the FTC argued the same substantiation standard applied on summary judgment should apply in the contempt proceedings. See Mot. for Show Cause 22 [Doc. No. 332-1, at 27]. Then, in reply to the defendants' argument that it should be able to present expert opinions on the level of substantiation required, the FTC argued, "[R]elitigation of these settled issues would be improper under res judicata principles," and "[U]nder res judicata principles, it is not proper to relitigate what constitutes competent and reliable scientific

evidence for weight-loss products." FTC Reply Br. 5-6 [Doc. No. 366, at 8-9].

While the FTC invoked "res judicata principles" several times, it actually cited to the doctrine of collateral estoppel--also known as issue preclusion--which bars relitigation of an **issue** that has already been litigated and resolved in a prior proceeding. Id. at 6 (citing In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 n.3 (11th Cir. 1990).

> To claim the benefit of collateral estoppel the party relying on the doctrine must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been "a critical and necessary part" of the judgment in the first action; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998) (citation omitted). Application of collateral estoppel is within the court's discretion. Balbirer v. Austin, 790 F.2d 1524, 1526 (11th Cir. 1986). And it is this doctrine that the court (somewhat vaguely) relied on to hold the only evidence relevant to whether the contempt defendants possessed competent and reliable

scientific evidence was the kind previously described by Dr. Aronne and adopted by the court. See May 11 Order 7-10 [Doc. No. 390].[7]

The prior proceeding here was the parties' cross-motions for summary judgment. As discussed in the May 11 Order, the FTC had alleged the defendants' lack of reasonable basis claims were unsubstantiated, and it was a question of fact for expert interpretation what type of tests would properly substantiate the claims. FTC v. Nat'l Urological Group, Inc., 645 F. Supp. 2d 1167, 1202, 1190 (N.D. Ga. 2008). In support of its motion for summary judgment, the FTC presented expert evidence by Dr. Aronne regarding the level of substantiation required for the lack of reasonable basis claims. Rather than attempt to counter this evidence, the defendants "simply argued that the claims were not made and . . . maintained that the numerous studies regarding the products' ingredients that they relied upon support their ingredient-specific claims." Id. at 1202 n.21. "Accordingly, the court conclude[d] that there [was] no issue of fact regarding the requisite levels of substantiation." Id. at 1202. The defendants had admitted their

---

[7] The court inartfully stated the resolved fact question was "part of the law of the case," which calls to mind a related, but different legal doctrine. Cf. 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478 (2d ed. 2002) ("There are, to be sure, occasions on which courts absent-mindedly . . . rely on law-of-the-case expressions to support conclusions that might better rest on some other preclusion theory.").

products had not been tested in the manner required, so the court found the claims were unsubstantiated and granted summary judgment. Id. at 1203.

There is no legitimate dispute that at least three elements of the issue preclusion doctrine are satisfied in the present contempt proceeding.[8] It is clear the issue of what constitutes competent and reliable scientific evidence was actually litigated, and that the determination of the issue in favor of the FTC played a critical, necessary part in the grant of summary judgment. The defendants had a full and fair opportunity to present their own expert evidence to challenge Dr. Arrone, perhaps creating a question of material fact sufficient to withstand summary judgment. They chose not to.

The only element the defendants essentially dispute--though never by name or citation to any law of issue preclusion--is

---

[8] Additionally, issue preclusion can apply in a civil contempt to enforce a judgment, even though they are not entirely separate proceedings. See 18 Wright & Miller, supra, § 4422 ("A judgment that resolves issues by a preponderance of the evidence, for example, precludes relitigation of those issues in proceedings that seek to prove civil contempt of the judgment by clear and convincing evidence."); see also United States v. Rylander, 460 U.S. 752, 756 (1983); Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973 (1st Cir. 1995) (affirming bankruptcy court's application of issue preclusion in contempt proceedings to enforce the bankruptcy court's injunction). But see In re Justice Oaks, 898 F.2d at 1550 n.3 ("Law of the case differs from issue preclusion in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases.").

whether the issues on summary judgment and now are "identical." Throughout these proceedings, from the initial response to FTC's motion to show cause to the present motion for reconsideration, the defendants have argued the challenged advertising claims are different from those at issue on summary judgment. E.g. [Doc. No. 346, at 23]; [Doc. No. 396, at 8-9]. The defendants correctly pointed out that the court had previously stated the substantiation needed is context specific and varies with advertising claims. Defs.' Reply Br. 10 [Doc. No. 368, at 13] (quoting Nat'l Urological Group, 645 F. Supp. 2d at 1186); Mot. to Reconsider 13 [Doc. No. 396]. But the court concluded in the May 11 Order that Dr. Arrone's report was broad enough to encompass the claims at issue now, so the same standard should be applied to these claims. Thus, the identical issue is what substantiation is needed, not what claims were made. That issue is precluded from relitigation by the defendants during the contempt proceedings after they passed on the previous opportunity to do so. See Comm'r v. Sunnen, 333 U.S. 591, 598 (1948) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.").

The defendants arguments in its motion for reconsideration do not alter this conclusion. They point out no clear error of law or fact made by the court. They generally repeat the arguments previously raised. Like the other bases for the motion to

17

reconsider, the court will not "change its mind" absent a showing of a clear error of law or fact. See Romala Stone, No. 1:04-CV-2307-RWS, 2009 WL 1405058, at *2. Accordingly, the motion for reconsideration is DENIED.

## III. Other Motions

The court will also address the FTC's long-ago filed motions to alter or amend the judgment and Arthur Leach's motion to strike. First, the FTC's motions rest on the premise that the court has found the defendants in contempt. The court has not done so, and, at the rate we're going, could not for some time. Accordingly, the FTC's motions are DENIED with leave to refile only if the court ultimately finds any of the defendants in contempt.

Second, Mr. Leach moves to strike two footnotes from two documents the FTC filed during these contempt proceedings. "The court may strike from a **pleading** . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Mr. Leach refers to the documents at issue as "pleadings," but they are not pleadings under the federal rules. Compare Fed. R. Civ. P. 7(a) (listing seven pleadings that are "allowed"), with id. 7(b) (distinguishing "motions and other papers" from pleadings). The motion may be denied on this basis alone.

Mr. Leach claims, "[T]he FTC has made allegations in two footnotes contained in separate documents that Mr. Leach and Mr.

18

Vic Kelley, another attorney, conspired with Contempt Defendant, Jared Wheat ("Wheat") to perform some illegal act," and these allegations should be stricken because they are "reprehensible, utterly false and irrelevant to the issues." [Doc. No. 411, at 1-2]. The court has reviewed both the footnotes in question and the exhibits to which they refer. While the definition of "conspire" does implicate an illegal act, see Black's Law Dictionary 329 (8th ed. 2004), its use here has not confused the court or prejudiced any party in the contempt proceedings before the court. See Smith v. Mercer, No. 1:09-CV-3008-RWS, 2012 WL 1314127, at *3, (N.D. Ga. Apr. 16, 2012), quoted in [Doc. No. 411]. Nor, on the basis of the FTC's source documents, does the court have any reason to believe Mr. Leach has violated any law while aggressively protecting his clients' interests. However, his and his clients' arguments that Hi-Tech "recognizes the debt that it owes and is willing to pay the debt as quickly as possible" rings hollow in light of the outstanding unpaid judgment, the length of time since the judgment was affirmed (and certiorari denied), and Hi-Tech's apparent revenue stream. If Hi-Tech is willing to pay as quickly as possible, it could start writing checks whenever it likes. In any case, the FTC is entitled to draw inferences and make arguments from the emails in its possession.

So, the court sees no reason to strike these statements from the footnotes in the FTC's response or its status report-- inflammatory and unnecessary though they may be. If the court were to strike every exaggerated statement made by any of these parties "in an effort to gain a litigation advantage," [Doc. No. 413, at 7], the docket would be pared down indeed. The court cautions the parties against attempting disparaging remarks against the other. Stick to the facts and the law; the court can separate the wheat from the chaff on its own. Mr. Leach's motion is DENIED.

**IV. Conclusion**

The motion for leave to file excess pages [Doc. No. 407] is GRANTED. The defendants' motion for reconsideration [Doc. No. 396, 397] is DENIED. Arthur W. Leach's motion to strike [Doc. No. 411] is DENIED. Finally, the FTC's motions to alter or amend the judgment [Doc. Nos. 333, 378] are DENIED WITHOUT PREJUDICE.

SO ORDERED, this 7th day of August, 2012.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge
