UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL TRADE COMMISSION,

       Plaintiff,

      v.

NATIONAL UROLOGICAL GROUP,
INC., et al.,
       Defendants.

CIVIL ACTION

NO. 1:04-CV-3294-CAP

**O R D E R**

This matter is before the court on Hi-Tech Pharmaceuticals, Inc., and Jared Wheat's motion for interlocutory appeal of the court's May 11, 2012, and August 7, 2012 orders, or in the alternative motion for mediation [Doc. No. 425], and the defendants and their counsel's motion to quash a subpoena issued at the request of the FTC [Doc. No. 414].

## I.  Motion for Interlocutory Appeal [Doc. No. 425]

As an initial matter, the court notes that the defendants, in a footnote of their reply brief, "note that the FTC's response (Doc. 429) was untimely filed and should be stricken from the record." Reply Br. 1 n.1 [Doc. No. 430]. Notwithstanding the ridiculous suggestion that the FTC's brief should be stricken even if not timely filed, the defendants incorrectly calculated the due date (perhaps forgetting Monday September 3 was a legal holiday?), so the brief was timely filed. See Fed. R. Civ. P. 6(a)(3)(A), 6(d).

The defendants seek an interlocutory appeal under 28 U.S.C. § 1292(b). That statute provides:

> When a district judge, in making in a civil action an order not otherwise appealable . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

If the district court so states, then the court of appeals may permit an appeal from the order.

The defendants frame the supposed controlling questions of law in their motion. "The questions are purely legal: whether public policy trumps the actual wording of an injunction and whether the Court imposed a standard on Defendants that is contrary to federal law?" Mot. for Appeal 3 [Doc. No. 425]. In neither order the defendants seek to appeal did the court hold public policy "trumps" an injunction, notwithstanding the defendants' characterization of the court's reasoning. See also Reply Br. 3 [Doc. No. 430] (characterizing the court's application of SEC v. Goble, in its denial of defendants' motion for reconsideration as "to read that, where the public interest is involved, the Court could hold Defendants accountable to a standard outside the four corners of the Injunction").

The defendants continue to proclaim they and their lawyers "did not read the Court's injunction in the same manner that the Court does and hence did not use the standard that the Court has held applicable." Mot. for Appeal 3 [Doc. No. 425]. This is not surprising, both because plenty of litigation arises because parties and courts read statutes, contracts, and orders differently from one another, and because the defendants have several times in this action have appeared to read the court's orders differently from how it wrote them. However, simply because one side does not agree with the court's order does not mean there is a "substantial ground for difference of opinion" as to the question.

And the defendants' citation to the <u>Pom Wonderful</u> decision likewise does not show any ground for difference of opinion. The defendants argue the ALJ "read the Court's Summary Judgment Decision (which the Court uses to interpret the Injunction) to hold that 'the erectile dysfunction claims made in that case required well-designed, placebo-controlled, randomized, double-blind clinical trials.' It did not read this Court's order as requiring that standard for all claims made about all products." <u>Id.</u> First, the ALJ's order has nothing whatsoever to do with whether a party is precluded from relitigating an issue conclusively determined within earlier proceedings, so how the defendants think the ALJ in <u>Pom Wonderful</u> read this court's summary judgment order is plainly

inapplicable. Second, the court **agrees** with the ALJ's reading of the summary judgment order because--the court sounds like a broken record on this point--this court never held that the standard at issue applies, as the defendants state, "for all claims made about all products." Mot. for Appeal 3 [Doc. No. 425].

The court also does not believe the "the Court imposed a standard on Defendants that is contrary to federal law." Id. Presumably, the defendants are referring to their repetitious argument that the injunction (or the court's other orders in this action) conflicts with the FDA's regulatory scheme and various provisions of federal law. The court finds no substantial ground for a difference of opinion on these matters, and will not certify an appeal based on this argument. Thus, the motion for interlocutory appeal [Doc. No. 425] is DENIED. The defendants move, in the alterative, for a referral to a magistrate judge for mediation. The court DENIES the alternative motion.

## II. Motion to Quash Subpoena [Doc. No. 414][1]

On June 18 and June 25, 2012, the U.S. District Court for the Northern District of Alabama issued subpoenas at the FTC's request. The subpoenas are directed at defendants' counsel, Mr. Joseph Schilleci, and they direct him to (1) produce documents containing

---

[1] The FTC's unopposed motion for a surreply [Doc. No. 421] is GRANTED.

or relating to advice he gave to the defendants about their compliance with this court's final judgment and permanent injunction, and (2) testify at a deposition. Mr. Schilleci moves to quash the subpoenas on the basis that the "advice" the subpoena requests is protected by the attorney-client privilege and the rule of client confidentiality under the Alabama Rules of Professional Conduct. Further, Mr. Schilleci argues the scope of the subpoena is overbroad and unduly burdensome to himself and the defendants.

In the motion to quash, Mr. Schilleci concedes that this court has already held the defendants waived the attorney-client privilege as to communications and other documents "that contain or relate to advice that counsel gave them about the compliance of their advertising with the final judgment and the FTC Act." [Doc. No. 414, at 6] (quoting Order of Jan. 20, 2012 [Doc. No. 365, at 3]). However, Mr. Schilleci argues the advice he provided "is not covered by the scope of" the January 20, 2012 order. The reason his advice was not covered by the waiver as to advice about "compliance of their advertising with the final judgment" is because his "advice and counsel has not ever been intended to be offered as expert analysis of the Defendants' advertising," and instead it was

"related to his representation . . . in regard to the litigation between them and the FTC." [Doc. No. 414, at 7].[2]

The core issue here is the defendants' assertion that they attempted, in good-faith, to comply with the permanent injunction. Part of the basis for this good-faith is that the defendants' attorneys did not believe the injunction prohibited making the advertisements the FTC claims violate the injunction. Thus, the court held the defendants had placed attorney-client communications and documents containing or relating to counsels' advice regarding compliance in issue and had waived the privilege that otherwise would have protected them from disclosure. Notwithstanding Mr. Schilleci's assertion that he never intended to give "expert analysis," he at least had some communications with Jared Wheat in 2010 regarding proposed web pages and advertisements' compliance with the injunction. Wheat Decl. ¶ 7 [Doc. No. 408-1]; FTC Ex. 39 [Doc. No. 366-1, at 8] (Mr. Wheat writing, "It's . . . Jody's [Schilleci's] opinion that on the Benzedrine label/box we need to drop" a claim); FTC Ex. 49 [Doc. No. 366-1, at 41] ("Jody and I have worked through the first wave of web pages over the past few months, and I believe they are compliant; but I need to have a

---

[2] Mr. Schilleci also describes his representation of the defendants for several years before the applicable time period of the request, which seeks only information from January 1, 2009 to the present. His prior representation in this action is irrelevant.

legal opinion on all future ads in case the FTC tries an enforcement proceeding ie; contempt of court. Jody, is too gun shy to provide such as after the loss at the 11th he thinks we would need a double-blind placebo study on every product."). Regardless of whether Mr. Schilleci was employed to provide "expert" advice or how he may have couched the advice he gave, Mr. Wheat considered it to relate to compliance with the order and waived the attorney-client and confidentiality privileges as to those communications.[3]

That is not to say the FTC may pry into every communication between Mr. Schilleci and his client. There are many areas of Mr. Schilleci's representation that remain protected by attorney-client privilege, including his current representation during the contempt proceedings that began in late 2011. Under Fed. R. Civ. P. 45(c), the court may modify a subpoena if it requires disclosure of protected matter. Thus, the court will further restrict the time period covered by the subpoena from January 1, 2009, until the earlier of (1) November 1, 2011, the date the FTC filed its first motion for a show cause order, or (2) the date Mr. Schilleci or the defendants became aware that the FTC was going to file said motion.

---

[3] While Judge Bowdre originally concluded the subpoenas would likely result in disclosure of information "beyond the categories of communication" this court deemed waived [Doc. No. 415, at 2], Judge Bowdre did not have the benefit of seeing Mr. Wheat's emails and his references to communications with Mr. Schilleci regarding the advertisements' compliance with the injunction.

This modification will protect the communications related to the ongoing litigation surrounding the defendants' alleged contempt, while exposing (due to waiver) communications relating to the defendants' earlier attempts advertise their products in compliance with the final judgment and permanent injunction. Additionally, as requested by the Mr. Schilleci and the defendants, the court modifies the scope of the subpoena to only the dietary supplements at issue in the contempt proceedings.[4] Thus, with these modifications, the court addresses the "overbreadth" concerns Mr. Schilleci raises that the court believes have merit. Thus, the motion to quash [Doc. No. 414] is DENIED.

## III. Conclusion

The motion to quash subpoena [Doc. No. 414] is DENIED. The FTC's motion for surreply as to the motion to quash [Doc. No. 421] is GRANTED. The FTC's motion for surreply as to the interlocutory appeal [Doc. No. 432] is DENIED. The motion for interlocutory appeal [Doc. No. 425] is DENIED.

SO ORDERED, this 18th day of September, 2012.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge

---

[4] The subpoena may already be limited to these products based on paragraphs 2-3 of the request to produce documents. But this order makes the scope clear, if it was not already.