UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FEDERAL TRADE COMMISSION,

       Plaintiff,

   v.

NATIONAL UROLOGICAL GROUP,
INC., et al.,

       Defendants.

CIVIL ACTION NO.

1:04-CV-3294-CAP

## O R D E R

This matter is before the court to determine the nature and amount of sanctions to impose against Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), Jared Wheat, Sean Smith, and Dr. Terrell Mark Wright.  The court also addresses the Federal Trade Commission's ("FTC") renewed motions seeking to modify two final judgment and permanent injunctions [Doc. Nos. 561 and 562], the FTC's motions for an order of final disposition in garnishment as to SunTrust Bank and Quantum National Bank [Doc. Nos. 577 and 583], Hi-Tech and Wheat's motion for an order to show cause [Doc. No. 615], and the FTC's motion for leave to file a surreply in opposition to the motion for an order to show cause [Doc. No. 631].

## I.    Introduction

On November 11, 2004, the FTC filed a complaint alleging that several defendants had violated Sections 5 and 12 of the Federal Trade Commission Act (hereinafter "the FTC Act"), 15 U.S.C. §§ 45(a) and 52, by making false and unsubstantiated claims in connection with their advertising and sale of various dietary supplements [Doc. No. 1].  The court granted summary judgment in favor of the FTC on June 4, 2008.  *See FTC v. Nat'l Urological Group, Inc.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008), *aff'd*, 365 F. App'x 358 (11th Cir. 2009), *cert. denied*, 131 S. Ct. 505 (2010).  The court entered two separate final judgment and permanent injunctions against the defendants on December 16, 2008, enjoining them from several activities related to their previous violations of the FTC Act.  The first final judgment and permanent injunction is against National Urological Group, Inc., Hi-Tech, Wheat, Thomasz Holda, and Smith [Doc. No. 230] (hereinafter "the Hi-Tech Order").  The second final judgment and permanent injunction is against Wright [Doc. No. 229] (hereinafter "the Wright Order.")

Section II of each of the injunction orders prohibits the defendants from advertising weight-loss products using claims that the products cause rapid or substantial weight loss and fat loss or claims that the products affect metabolism, appetite, or fat unless those claims are substantiated with

"competent and reliable scientific evidence."  Section VII of the Hi-Tech Order also prohibits defendants Hi-Tech, Wheat, and Smith from making claims concerning the comparative efficacy or benefits of weight-loss supplements that are not substantiated with "competent and reliable scientific evidence." Finally, Section VI of the Hi-Tech Order requires Hi-Tech, Wheat, and Smith to include a specific health-risk warning on any advertisement, product package, and product label that makes efficacy claims relating to yohimbine-containing products.

On November 1, 2011, the FTC filed a motion seeking an order from the court directing Hi-Tech, Wheat, and Smith to show cause why they should not be held in contempt of the permanent injunction [Doc. No. 332]. The FTC contended that the defendants had made revised statements about four Hi-Tech products that are not substantiated by competent or reliable scientific evidence despite such evidence being required by the permanent injunction.  On March 21, 2012, the FTC filed a similar motion for an order against Wright based on his endorsements of one product, Fastin [Doc. No. 377].  On May 11, 2012, the court granted both motions and scheduled a status conference to address scheduling and discovery [Doc. No. 390] (hereinafter "the May 11 Order").  The court held a status conference with the parties on May 31, 2012.  Following the status conference, the court ordered

Hi-Tech, Wheat, Smith, and Wright to show cause why they should not be held in contempt for failing to comply with the requirements of the final judgment and permanent injunctions against them [Doc. No. 399] (hereinafter "the May 31 Show Cause Order").

The May 11 Order and the May 31 Show Cause Order collectively set out the procedure the court would follow to resolve the questions of the defendants' alleged contempt.  The court (1) required the FTC to file a specific list of factual allegations and the defendants to admit or deny those allegations (akin to a complaint and answer), (2) permitted limited discovery on relevant issues, and (3) contemplated a "pre-hearing motion" to determine whether there were disputed questions of material fact regarding the defendants' alleged contempt.  *See* May 11 Order at 13–14 [Doc. No. 390]; May 31 Show Cause Order [Doc. No. 399].  The procedure set forth by the court is supported by Eleventh Circuit case law.  *See Mercer v. Mitchell*, 908 F.2d 763 (11th Cir. 1990); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 140 F. App'x 860, 864–65 (11th Cir. 2005) (discussing the "flexible" due process requirements for civil contempt proceedings).  The court prescribed this procedure because it anticipated there would be a limited number of facts in dispute and the scope of any eventual contempt hearing could be significantly narrowed by addressing legal questions based

on written briefs.  Thus, the defendants have had notice and a full opportunity to be heard on the question of their contempt.  *See FTC v. Leshin*, 719 F.3d 1227, 1235 (11th Cir. 2013) (hereinafter "*Leshin* II") ("It is by now well-settled law that due process is satisfied when a civil contempt defendant receives notice and an opportunity to be heard . . . .").

The contempt proceedings progressed essentially as prescribed.  First, the FTC filed its complaint-like allegations [Doc. No. 394, at 2–17].  Then, the defendants answered.  *See* [Doc. No. 405] (Hi-Tech and Wheat's response); [Doc. No. 406] (Wright's response); [Doc. No. 467] (Smith's adoption of Hi-Tech and Wheat's response as his own).[1]  On October 22, 2012, the FTC filed a motion for (summary) contempt judgment [Doc. No. 446].  The defendants responded: admitting or denying (though mostly admitting) the FTC's alleged undisputed material facts, adding their own additional material facts, and arguing why summary contempt judgment should not be granted.  *See* [Doc. Nos. 475, 479, 480, 482].  The FTC replied [Doc. Nos. 485 and 486], and the court allowed Wheat and Hi-Tech to file a surreply [Doc. No. 487-2].  On August 8, 2013, the court entered an order wherein it concluded that Hi-Tech, Wheat, Smith, and Wright had made certain representations without

---

[1] The court allowed Smith's "adoption" of his co-defendants' response "as if timely made" in its December 11, 2012 order [Doc. No. 470 at 3].

substantiation by competent and reliable scientific evidence, as prohibited by the permanent injunctions in this case [Doc. No. 524] (hereinafter "the August 8 Contempt Order"). The court found Hi-Tech, Wheat, Smith, and Wright to be in contempt of the permanent injunctions.[2] But the court reserved judgment on the nature and amount of sanction for the defendants' contempt of the court's orders. Beginning on January 21, 2014, and ending on January 24, 2014, the court held an evidentiary hearing to determine the appropriate nature and amount of sanctions. Following the evidentiary hearing, the parties submitted proposed findings of fact and conclusions of law and post-trial briefing [Doc. Nos. 600, 623, 624, 629, 630, 632, 633, 634]. The following order sets forth the court's findings of fact and conclusions of law regarding the nature and amount of sanctions as required by Federal Rule of Civil Procedure 52 and addresses related pending motions.

## II.   Sanctions

On August 8, 2013, the court concluded that Hi-Tech, Wheat, and Smith had violated the Hi-Tech Order by making unsubstantiated

---

[2] The court made its findings of civil contempt based on clear and convincing evidence. Clear and convincing evidence established that the court's orders were valid and lawful, that the orders were clear and unambiguous, that the defendants had the ability to comply with the orders, and that the defendants violated the court's orders. There was no evidence presented at the sanctions hearing that would cause the court to revisit these findings.

advertising claims for Fastin, Lipodrene, Benzedrine, and Stimerex-ES and by failing to include a required health-risk warning for those products.  In addition, the court concluded that Wright had violated the Wright Order by providing an unsubstantiated endorsement for Fastin that Hi-Tech, Wheat, and Smith used in Fastin print advertisements.  Accordingly, the court held the defendants in contempt of the Hi-Tech Order and the Wright Order.  The court reserved judgment on the nature and amount of sanctions and scheduled a sanctions hearing to resolve this issue.  This order resolves the issue of the nature and amount of sanctions imposed against the defendants following the sanctions hearing.

### A.    Findings of Fact

The court makes the following findings of fact based on the clear and convincing evidence presented by the parties or otherwise stipulated.

### 1. Control Over Hi-Tech's Marketing Practices

Wheat is the sole owner, president, chief executive officer, secretary, and treasurer of Hi-Tech.  Wheat is responsible for the labeling, promotion, and advertising of Fastin, Lipodrene, Benzedrine, and Stimerex-ES.  Smith is the senior vice-president in charge of sales of Hi-Tech products, including Fastin, Lipodrene, Benzedrine, and Stimerex-ES.  He oversees the sales force and has the authority to decide which retailers sell Hi-Tech products.  Smith

is also the head of the Food, Drug, and Mass division of Hi-Tech.  He is responsible for acquiring retail accounts with food stores, drug chains, and mass merchandisers.  Smith has helped to place violative advertising for Fastin, Lipodrene, Benzedrine, and Stimerex-ES with various publications and agencies.  In addition to his current job responsibilities, Smith was responsible for the day-to-day operations of Hi-Tech while Wheat was incarcerated from March 16, 2009, through September 15, 2010.[3]

### 2.  Violative Advertising

From September 2010 through at least December 14, 2012, Hi-Tech, Wheat, and Smith (hereinafter "the Hi-Tech defendants") disseminated print advertisements for Fastin containing claims that violate the Hi-Tech Order through national magazines such as *Allure*, *Cosmopolitan*, *First*, *Fitness*, *Flex*, *Globe*, *In Touch*, *Life & Style*, *Martha Stewart Weddings*, *Muscle & Fitness*, *MuscleMag International*, *Muscular Development*, *National Enquirer*, *OK*, *Redbook*, *Self*, *Star*, *US Weekly*, *USA Today Women's Health Guide*, *Whole Living*, *Women's Day*, and *Women's World*.[4]  In addition to the

---

[3] Smith testified that it was his job to "hold down the fort" while Wheat was incarcerated.  Tr. of Sanctions Hr'g, Jan. 21, 2014 at 68:1–69:1 [Doc. No. 618].
[4] The FTC has notified the court in response to a post-trial motion by Hi-Tech and Wheat that violative print advertisements have been disseminated as recently as November 2013 in *Flex* magazine [Doc. No. 637].  The court cannot make a finding as to the validity of this allegation at this time.

national magazines, the Hi-Tech defendants disseminated the violative Fastin print advertisements through the company website[5] through early January 2014.  Since September 17, 2010, the Hi-Tech defendants have advertised and offered Fastin for sale on the company website using violative advertising claims; these violative actions continued through January 21, 2014.[6]  Since January 1, 2009, the Hi-Tech defendants have advertised Fastin through product packaging and labels that contain violative claims. Even after the sanctions hearing, the Hi-Tech defendants continue to advertise Fastin through violative product packaging and labels that remain in the marketplace.

From October 2010 through at least December 14, 2012, the Hi-Tech defendants disseminated print advertisements for Lipodrene that contain claims that violate the Hi-Tech Order through national magazines such as *Flex*, *Muscle & Fitness*, and *MuscleMag International*.  In addition, they disseminated the violative Lipodrene print advertisements through the company website through early January 2014.  Since September 17, 2010, the Hi-Tech defendants advertised and offered Lipodrene for sale on the company website using violative advertising claims; these violative actions continued

---

[5] The company website is www.hitechpharma.com.
[6] The first day of the sanctions hearing was January 21, 2014.

through January 21, 2014.  Since January 1, 2009, the Hi-Tech defendants have advertised Lipodrene through product packaging and labels that contain violative claims.  The Hi-Tech defendants have continued to advertise Lipodrene through violative product packaging and labels even after the sanctions hearing.

From September 2010 through at least November 2011, the Hi-Tech defendants disseminated print advertisements for Benzedrine that contain claims that violate the Hi-Tech Order through national magazines such as *Flex*, *Muscle & Fitness*, *MuscleMag International*, and *Muscular Development*.  In addition, they disseminated the violative Benzedrine print advertisements through the company website through early January 2014. From September 17, 2010, the Hi-Tech defendants advertised and offered Benzedrine for sale on the company website using violative claims; these violative acts continued through January 21, 2014.  Since January 1, 2009, the Hi-Tech defendants have advertised Benzedrine through product packaging and labels that contain violative claims.

From October 2010 through at least December 14, 2012, the Hi-Tech defendants disseminated print advertisements for Stimerex-ES that contain claims that violate the Hi-Tech Order through national magazines such as *Flex*, *Muscle & Fitness*, *MuscleMag International*, and *Muscular*

*Development*.  They also disseminated the violative print advertisements through the company website through January 21, 2014.  Since September 17, 2010, the Hi-Tech defendants advertised and offered Stimerex-ES for sale on the company website using violative claims; they continued these violative acts through January 21, 2014.  From January 1, 2009, the Hi-Tech defendants have advertised Stimerex-ES through product packaging and labels that contain violative claims.  They continue to advertise Stimerex-ES through violative product packaging and labels.

### 3.  Review of Advertising by Legal Counsel

On June 1, 2010, Wheat asked Joseph Schilleci[7]—counsel for Hi-Tech and Wheat—to review a proposed Fastin advertisement.[8]  A few days after this request, Schilleci, Arthur Leach, Victor Kelley, and Tim Fulmer—counsel for Hi-Tech and Wheat—drafted a memorandum, dated June 4, 2010, to Wheat relating to the proposed Fastin advertisement (hereinafter "the June 4 Memo").[9]  In the memorandum, counsel stated, "[B]ased upon our review, we have grave concerns that the publication of the proposed Fastin®

---

[7] Joseph Schilleci also goes by the name Jody.
[8] The subject line for Wheat's email to Schilleci states, "One last set of eyes." In addition, Wheat stated in his email to Schilleci that all of the claims in the Fastin advertisement were included on the Fastin packaging and labels. Defs.' Ex. 8 at 1 [Doc. No. 487-5 at 6].
[9] Wheat received a copy of the June 4 Memo.

advertisement would not be in compliance with the broad scope of the FTC injunction."[10]   Plt.'s Ex. 117 at 2 [Doc. No. 485-2 at 2].   Counsel also identified specific statements that they believed were prohibited.   These statements were believed to refer to the product Fastin rather than the ingredients, thus requiring proper substantiation.   Counsel offered their opinion in the June 4 Memo that certain forms of advertising would be in compliance with the Hi-Tech Order.   The Hi-Tech defendants did not adopt counsel's suggested approach for advertising Fastin.   Despite receiving the June 4 Memo, they continued to make the claims that counsel believed were prohibited.

Between July 2010 and September 2010, Edmund Novotny reviewed print advertisements and web pages for Fastin, Lipodrene, Benzedrine, and Stimerex-ES; he did not review product packaging and labels, and he did not provide an opinion on Wright's endorsement of Fastin.[11]   On July 20, 2010, Novotny recommended that the following claim be removed from the Fastin advertisement: "Warning: Extremely Potent Diet Aid! Do Not Consume Unless Rapid Fat And Weight Loss Are Your Desired Result."   Defs.' Ex. 13 at 1, 4 [Doc. No. 487-5 at 12, 15].   Despite the recommendation, this language

---

[10] While the June 4 Memo did not specifically address proposed web pages to be used by Hi-Tech, counsel indicated that they contained similar types of representations that would likely be considered non-compliant.

[11] Novotny did not review claims that appeared on images of product packaging and labels included in the print advertising or web pages.

continued to appear on Fastin packaging through at least December 31, 2011. Following his review, Novotny approved certain claims, including, "Rapid Fat Loss Catalyst," "Rapid Fat Loss," "Increases the Metabolic Rate, Promoting Thermogenesis (The Burning of Stored Body Fat)," and "Rapid Fat Burner." Regarding Novotny's approval of the claim "fat loss," Wheat stated in a phone conversation with Smith, "I don't know if Ed [Novotny] just was pulling that out of his rear or what."  Plt.'s Ex. 106 at 7:14–16 [Doc. No. 446-13 at 235].

With regards to the advice he received from counsel on the advertising claims, Wheat stated, "I just wanted something in writing from these cats." Plt.'s Ex. 106 at 7:17–18 [Doc. No. 446-13 at 235].  He also stated, "I'm going to have to put these cats up on my stand if, you know — if we ever have to get drug back before Panelle [sic], I'm going to put Jody [Schilleci] and Ed [Novotny] up — you know, they're the scapegoats, in essence.  Hey, you gave me this advice."  Plt.'s Ex. 106 at 14:2–6 [Doc. No. 446-13 at 242].

### 4. Yohimbine Warning

The court issued the Hi-Tech Order on December 16, 2008, which set forth a specific yohimbine warning required to be included on all packaging and labels.  Proofs provided by the printer indicate that the required warning was incorporated into product packaging and labels in 2012.  Despite this evidence, an investigator with the FTC purchased a bottle of Fastin from a

CVS Pharmacy store in Washington, DC, on August 2, 2013, that did not contain the required yohimbine warning on the product packaging.

### 5.  Substantiation Requirement

During the period of time that the Hi-Tech defendants disseminated violative advertising, they were aware that double-blind, placebo-based, clinical studies were required to substantiate weight-loss claims for the dietary supplements.  On March 28, 2010, in an email from Wheat to Smith, Wheat stated, "Ullman and Shapiro are not aware of the recent ruling in the 11th circuit against us because if the verdict stands it will allow FTC to win any advertisement case that a company has not done a double-blind placebo study on the product itself."  Plt.'s Ex. 96 at 3 [Doc. No. 446-13 at 172].  In the June 4 Memo, counsel for Hi-Tech and Wheat stated, "[B]ased upon Judge Pannell's previous findings, it is reasonable to assume that he would take a position consistent with the FTC that double-blind, clinical trials of the product were necessary . . . ."  Plt.'s Ex. 117 at 4 [Doc. No. 485-2 at 4].  On July 7, 2010, in an email from Wheat to Leach and Schilleci—counsel for Hi-Tech and Wheat—Wheat stated, "[I]f our set of facts is not good enough then a double-blind placebo study would be required."  Plt.'s Ex. 100 at 3 [Doc. No. 446-13 at 189].  The Hi-Tech defendants have not performed double-

blind, placebo-based, clinical studies to substantiate the weight-loss claims as required by the Hi-Tech Order.

### 6. Violative Advertising After August 8 Contempt Order

On August 30, 2013, an investigator with the FTC purchased Lipodrene from the company website. The bottle that he received in the mail contained violative claims on the product label. On August 30, 2013, the investigator purchased Benzedrine from the website Amazon.com. The bottle that he received in the mail contained violative claims on the product packaging and did not include the required yohimbine warning. On December 14, 2013, the investigator once again purchased Lipodrene from the company website. The bottle that he received in the mail contained violative claims on the product label. On December 20, 2013, the investigator purchased Fastin from a General Nutrition Centers, Inc. ("GNC") store in Washington, DC, that contained violative advertising claims on the product packaging and label. On January 20, 2014, the investigator obtained Fastin from an Atlanta-area GNC store that contained violative advertising on the product packaging and label.

The Hi-Tech defendants did not remove violative advertising from the company website until January 2014, approximately 5 months after the court had found the defendants in contempt. The violative advertising on the

company website included copies of the violative print advertisements. On the first day of the sanctions hearing, January 21, 2014, the public was still able to access the violative advertising hosted on the company website through internet search engines such as Google and Bing.[12]

### 7. Inaccurate and Incomplete Responses

The Hi-Tech defendants repeatedly provided inaccurate and incomplete information in compliance reports submitted to the FTC, and in response to requests for information by the FTC. For example, on August 19, 2013, the FTC made a compliance demand on the Hi-Tech defendants that requested them to identify and describe any entity for which Hi-Tech or Wheat is an officer, director, principal, owner or shareholder. In response to a demand letter, dated September 11, 2013, the Hi-Tech defendants stated that Hi-Tech Publishing, Inc. ("Hi-Tech Publishing") does not sell or advertise weight-loss products. Contrary to this assertion, Hi-Tech Publishing is wholly owned by Wheat and has published a catalog titled "Hi-Tech Health & Fitness," which was sent to retailers to be offered to customers. The "Hi-Tech Health & Fitness" magazine contains print advertisements for Hi-Tech products and articles intended as a form of advertising. The Hi-Tech defendants also failed

---

[12] The Hi-Tech defendants merely disabled links to the violative advertising on the company's website prior to January 21, 2014.

to provide the FTC with complete and accurate information regarding advertisements and the product packaging and labels for Hi-Tech products on repeated occasions.

### 8.  Other Dietary Supplement Businesses

Wheat acquired Hi-Tech Nutraceuticals, LLC ("Nutraceuticals") in 2012; he is the sole owner of the company.  Nutraceuticals is a nutritional and dietary supplement manufacturer.  Wheat owns a consulting company called PharmaTech Consulting, Inc. ("PharmaTech"), which claims to specialize in Food and Drug Administration ("FDA") and FTC regulatory matters.  This company offers consulting, submission, and auditing services, including the review of dietary supplement labels and advertising for compliance with FDA and FTC regulations.[13]

The Hi-Tech defendants acquired APS Nutrition ("APS") on November 3, 2011, and they acquired ALR Industries ("ALRI") on December 28, 2012.

---

[13] Patrick Jacobs, who was called as a witness by the defendants during the sanctions hearing, is identified on the company website for Nutraceuticals as affiliated with the company, and Wheat testified during the sanctions hearing that he is affiliated with PharmaTech.  Jacobs testified during the sanctions hearing that he was unaware prior to preparing for the sanctions hearing that he was identified as affiliated with these companies.  Wheat also testified during the sanctions hearing that PharmaTech offers the services of Novotny to potential clients.  Novotny testified during the sanctions hearing that he was unaware prior to the sanctions hearing that he was being held out as associated with PharmaTech.

Both companies engage in activities covered by the Hi-Tech Order. The Hi-Tech defendants did not inform the FTC of these acquisitions. In addition, Wheat acquired Nutraceuticals in September 2012, which engages in activities covered by the Hi-Tech Order, and did not inform the FTC of this acquisition.

### 9. Dr. Mark Wright

Wright violated the Wright Order by providing an unsubstantiated endorsement for Fastin. Beginning in October 2010, print advertisements were disseminated that featured an unsubstantiated endorsement by Wright. These violative print advertisements were also featured on the company website through at least December 30, 2013. In addition to providing an endorsement of Fastin that was used in the advertising of the product, Wright authored articles printed in the "Hi-Tech Health & Fitness" magazine promoting Hi-Tech weight loss products.[14] These articles were disseminated in violation of the Wright Order.

### 10.   Gross Receipts

The Hi-Tech defendants have sold Fastin, Lipodrene, Benzedrine, and Stimerex-ES without interruption since January 1, 2009. For the time period

---

[14] The articles were published in issues of the "Hi-Tech Health & Fitness" magazine dated April 2009 and January 2011.

of January 1, 2009, through August 31, 2013, the gross sales less refunds and returns from the sale of Fastin, Lipodrene, Benzedrine, and Stimerex-ES totaled $40,120,950.  For the time period of January 1, 2009, through August 26, 2013, during which Hi-Tech used Wright's endorsement to advertise Fastin, the gross sales less refunds from the sale of Fastin totaled $21,493,557.64.

### 11.  Unpaid Judgment

On September 15, 2012, Wheat wrote a check to the FTC in the amount of $150,000; this is the only voluntary payment made by Wheat.  The parties stipulate that as of January 22, 2014, approximately $3,799,303.05 of the $15,900,000 judgment entered by the court against Hi-Tech, Wheat, Holda, and Smith, jointly and severally, remains unpaid.

During the sanctions hearing, Wheat testified that he attempted in good faith to pay the underlying judgment.  The evidence does not support his testimony.[15]  On April 19, 2010, while incarcerated, Wheat sent an email to Kelley, which stated, "I spoke with Art [Leach] on Friday and we discussed it may be wise to set up another bank account for Hi-Tech in case the FTC tries to execute against our current bank after they recieve [sic] the banking

---

[15] Wheat asserted his Fifth Amendment right against self-incrimination with respect to many questions concerning finances.

information revealed in the subpoena." Plt.'s Ex. 97 at 3 [Doc. No. 446-13 at 175]. After this email conversation, Kelley set up a bank account in the name of Affiliated Distribution, Inc. ("Affiliated")[16] to be used by Hi-Tech as its operating account. On November 3, 2011, after the FTC initiated this contempt action, Hi-Tech purchased APS Nutrition ("APS") for $1,200,000. In 2012, Wheat paid $2,000,000 from his personal bank account towards the purchase of Neutraceuticals. On December 28, 2012, Hi-Tech paid $600,000 as a down payment towards the $3,000,000 purchase price of ALRI.

On April 25, 2013, Wheat withdrew $1,000,000 from a bank account with East-West Bank. On January 18, 2012, an official check was purchased in the amount of $425,000 using funds from the Affiliated bank account with Fifth Third Bank. On January 26, 2012, an official check was purchased in the amount of $439,166.68 using funds from the Affiliated bank account with Fifth Third Bank. Between 2012 and 2013, Wheat received millions of dollars in dividends from Hi-Tech. On January 8, 2013, Wheat entered into a contract to purchase a Lamborghini Gallardo for $135,087. He paid a $2,000 deposit on January 10, 2013, and paid the balance of the purchase price on January 11, 2013.

---

[16] A wholly owned subsidiary of Hi-Tech.

### 12.   Recall

The Hi-Tech defendants have not recalled all Fastin, Lipodrene, Benzedrine, and Stimerex-ES with product packaging and labels containing violative claims.  Fastin, Lipodrene, Benzedrine, and Stimerex-ES with product packaging and labels containing violative claims remain in the marketplace at retail stores.

### B.   Conclusions of Law

This matter concerns civil contempt by the defendants.  District courts have wide discretion in fashioning an equitable remedy for civil contempt. *Leshin* II, 719 F.3d at 1231.  The Eleventh Circuit Court of Appeals has held, "'[S]anctions in civil contempt proceedings may be employed for either of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'"  *Id.* (quoting *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986)).  Coercive sanctions are limited by the principle that "once a contemnor's contumacious conduct has ceased or the contempt has been purged, no further sanctions are permissible."  *Id.*  However, "'the district court's discretion in imposing non-coercive sanctions is particularly broad and only limited by the requirement that they be compensatory.'"  *Id.* (quoting *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990)).  Confirming this broad discretion, the

United States Supreme Court has held, "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949).  With respect to the form of compensatory sanctions, the court of appeals has held that disgorgement of gross receipts is an appropriate compensatory remedy. *FTC v. Leshin*, 618 F.3d 1221, 1237 (11th Cir. 2010) (hereinafter "*Leshin* I"). The court does not believe profits is the proper form of relief because "[r]equiring the defendants to return the profits that they received rather than the costs incurred by the injured consumer would be the equivalent of making the consumer bear the defendants' expenses." *F.T.C. v. National Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1213 (N.D. Ga. 2008).  Finally, the amount of compensatory damages must be proven by a preponderance of the evidence.  *McGregor v. Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000).

As set forth in the preceding section of this order, the court has found that the Hi-Tech, Wheat, and Smith engaged in conduct violating the Hi-Tech Order from January 1, 2009, through at least August 31, 2013.  The court concludes, by a preponderance of the evidence, that the gross receipts for the sale of the violative products—Fastin, Lipodrene, Benzedrine, and Stimerex-

ES—during this period of time total $40,120,950.[17]  The court has also found

that Wright engaged in conduct violating the Wright Order from at least

September 1, 2010, through at least August 26, 2013.  The court concludes,

by a preponderance of the evidence, that the gross receipts for the sale of

Fastin during this period of time totals $21,493,557.64.[18]  These calculations

are based on the total billings for the products during the relevant time

periods minus refunds and returns.  "'Where . . . parties join together to

evade a judgment, they become jointly and severally liable for the amount of

damages resulting from the contumacious conduct.'"  *Leshin* I, 618 F.3d at

1236–37.  Accordingly, the court finds that $40,120,950 in compensatory

sanctions is owed to consumers.  The court finds that Hi-Tech, Wheat, and

Smith must pay compensatory sanctions, jointly and severally, in the amount

of $40,000,950.  The court also finds that Wright must pay compensatory

sanctions in the amount of $120,000.[19]  The court has the authority to impose

---

[17] The court bases this conclusion on a table used by the defendants at the
sanctions hearing, Defs.' Ex. 65 at 19 [Doc. No. 565 at 19], and other evidence
before the court.

[18] The court bases this conclusion on a stipulation by the defendants as to the
gross revenues of Fastin for this time period and a letter from counsel for the
defendants to counsel for the FTC.  Stipulations of Fact ¶5 [Doc. No. 534-1 at
3]; Plt.'s Ex. 167.

[19] The court arrives at this amount based on Wright's counsel's statements
during the sanctions hearing that Wright was paid a total of $120,000 by Hi-

a greater amount of compensatory sanctions against Wright, but the court elects not to exercise this authority in light of his consent to a permanent injunction as discussed more fully in Section III.C of this order.

In *F.T.C. v. Trudeau*, 579 F.3d 754 (7th Cir. 2009), the Seventh Circuit Court of Appeals held, "Beyond explaining its calculations, the court must also outline how the sanction should be administered." *Id.* at 774. In this matter, the court orders that the FTC must use these funds to reimburse consumers who purchased these products during the relevant time period. The court orders that all funds, either voluntarily paid by the defendants or otherwise collected by the FTC, must be paid into the Registry of the Court. The FTC may access the funds only with an order by the court granting permission to access and distribute the funds to the affected consumers. The FTC may use a reasonable portion of the compensatory sanction award to cover the costs of reimbursement, including locating the affected consumers and other expenses. Finally, if any funds remain after proper distribution to the affected consumers, the court will then make a determination of the appropriate distribution of those funds.

---

Tech for his services in 2010, 2011, and 2012, combined. Tr. of Sanctions Hearing, 1/24/2014 at 69:14–21 [Doc. No. 621].

District courts may impose incarceration as a coercive sanction in civil contempt proceedings. *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970 (11th Cir. 1986). The Supreme Court of the United States has held, "The paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994). "Imprisonment for a fixed term similarly is coercive when the contemnor is given the option of earlier release if he complies." *Id.* According to the Eleventh Circuit Court of Appeals, "Our sole inquiry into the legitimacy of incarceration for contempt, *per se*, is into the purpose of imprisonment. If the court's goal is to coerce, rather than to punish, then incarceration is viewed as civil even though imprisonment has concomitant punitive effects." *Combs*, 785 F.2d at 981.

As the court held in its August 8 Contempt Order, the absence of willfulness is not a defense in a civil contempt proceeding. *Leshin* I, 618 F.3d at 1232. "[S]ubstantial, diligent, or good faith efforts are not enough; the only issue is compliance." *Id.* The defendants' diligence and good faith are, at best, relevant to coercive contempt sanctions, but not compensatory sanctions. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 880 (Fed. Cir.

2011).  The court is not swayed by the defendants' attempt to offer a good faith, diligence defense to their contumacious conduct.  The evidence does not support such an argument.  The defendants received advice from counsel that specific claims would violate the court's orders.  Rather than heed the advice they received from counsel, the defendants sought advice from additional counsel not in good faith.  The FTC presented evidence of conversations between the defendants that shows the real motive of the defendants was to obtain advice from counsel to use as a shield to any contempt proceedings, even if they knew the advice was incorrect.

In this case, the Hi-Tech defendants' contumacious conduct continued after the court's August 8 Contempt Order.  With respect to the violative advertising claims disseminated through the company website, the Hi-Tech defendants did not correct their contumacious conduct until after the first day of the sanctions hearing.  Wheat has testified that he was unable to make the necessary changes to the company website because of illnesses in his immediate family.  The court is sympathetic to his situation, but any difficulties he faced did not excuse him of his duty to comply with the court's

orders, particularly after the court had entered its August 8 Contempt Order.[20]

More troubling is the fact that the contumacious conduct is ongoing. The defendants have not conducted a recall of the product from retail stores. Following the sanctions hearing, the parties submitted letters to the court to update the court on the presence of violative product packaging and labels in the retail market. Hi-Tech and Wheat indicated that representatives of the company had spoken to approximately 65% of its customers.[21] Hi-Tech and Wheat also state that they have produced new product packaging and labels for the products at issue. These efforts are insufficient. First, the court is skeptical that retail outlets will use the new product packaging and labels. In fact, an investigator with the FTC has submitted a declaration to the court stating that, as of February 6, 2014, the product was available for purchase at two retail outlets in Washington, DC, with violative product packaging and labels. Second, the court does not approve the new product packaging and

---

[20] Wheat's purported justification for the delay in complying with the court's order is suspect. Wheat testified during the sanctions hearing that he is essential to the operations of Hi-Tech. Despite his importance to the operations of the company, it continued to operate during the period of time of his family issues. Either Wheat continued to perform his responsibilities and chose to not make the necessary changes to the company website, or the company was able to operate without his involvement.

[21] The defendants have not informed the court regarding the substance of what the representatives said to customers.

labels.  The new labels submitted to the court contain violative claims.  The Fastin and Lipodrene labels include the word "thermogenic," while the Benzedrine label includes the word "anorectic."  The court's August 8 Contempt Order identified these words as representations that the products affect human metabolism, appetite, or body fat.  While the defendants attempt to define "thermogenic" as signifying the production of heat, the defendants previously defined the term as meaning the burning of stored body fat.  The latter definition was included on advertisements found to be violative by the court.  With respect to the word "anorectic," the court included a footnote in the August 8 Contempt Order noting that "anorectic" is defined as lacking appetite.  Use of "thermogenic" and "anorectic" on product packaging and labels violates the Hi-Tech Order.

Hi-Tech, Wheat, and Smith remain in contempt of the court's order as long as product packaging and labels remain in the retail market with violative claims.  Therefore, the court orders a recall of Fastin, Lipodrene, Benzedrine, and Stimerex-ES with violative product packaging and labels from all retail outlets.  The parties are required to submit written reports to the court within 60 days of this order on the status of the product recall.[22] Any of the parties may include a request for a hearing regarding the status of

---

[22] Any written reports submitted to the court must be under oath.

the recall.  The court will order coercive incarceration if the defendants have not taken sufficient action to effect a complete recall.

### C.   Conclusion

The court ORDERS disgorgement of $40,120,950 in compensatory sanctions.  Hi-Tech, Wheat, and Smith are jointly and severally liable for $40,000,950.  Wright is liable for $120,000.  The parties are ORDERED to administer the compensatory sanctions as directed above.  In addition, the court ORDERS Hi-Tech, Wheat, and Smith to recall from retail outlets all Fastin, Lipodrene, Benzedrine, and Stimerex-ES with violative product packaging and labels.  The parties are ORDERED to notify the court of the status of the recall as directed above.

### III.   Motions to Alter Final Judgment and Permanent Injunction

The FTC has filed two motions seeking to modify two separate final judgment and permanent injunctions [Doc. Nos. 561 and 562].  Through its first motion [Doc. No. 561], the FTC seeks to modify the Hi-Tech Order.  The FTC seeks to modify the Hi-Tech Order with respect to only Hi-Tech, Wheat, and Smith.[23]  The FTC proposes the following modifications:

> (1) [B]an [Hi-Tech, Wheat, and Smith] from participating in the advertising, marketing, promoting, offering for sale, sale, or

---

[23] The Hi-Tech order is against National Urological Group, Inc., Hi-Tech, Wheat, Thomasz Holda, and Smith.

> distribution of any dietary supplement and/or weight-loss
> product, program, and service; (2) broaden coverage of order
> provisions to cover any product or service; and (3) enhance
> monitoring and reporting provisions designed to give the
> Commission enhanced oversight of [Hi-Tech, Wheat, and Smith's]
> future compliance with the Hi-Tech Order.

Mem. in Supp. of Plt.'s Renewed Mot. to Modify at 8 [Doc. No. 561-1]. And

through its second motion [Doc. No. 562], the FTC seeks to modify the Wright

Order. The FTC proposes the following modifications:

> (1) [B]an Wright from participating in marketing any dietary
> supplement and/or weight loss product, including through
> endorsements; (2) broaden the order to cover false and
> unsubstantiated claims in the marketing of any product or
> service; and (3) enhance monitoring and reporting provisions
> designed to give the Commission oversight of Wright's future
> compliance with the [Wright] Order.

Mem. in Supp. of Plt.'s Renewed Mot. at 6 [Doc. No. 562-1]. Collectively, the

motions seek to impose greater restrictions on the defendants.

## A.    Legal Standard

The FTC seeks to modify the final judgment and permanent injunctions

pursuant to Rule 60(b). Pursuant to Rule 60(b), the court may modify an

injunction when "applying it prospectively is no longer equitable." The

Eleventh Circuit Court of Appeals has held that a district court has the

power to modify a judgment or order if the moving party has shown that the

judgment or order has failed to accomplish the results it was designed to

achieve.  *Epic Metals Corp. v. Souliere*, 181 F.3d 1280, 1283 (11th Cir. 1999)

(citing *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 247 (1968)).

In subsequent cases, the court of appeals has refined the standard further by

holding that the district court's authority to modify a judgment or order is

subject to the constraints set forth in *Rufo v. Inmates of Suffolk County Jail*,

502 U.S. 367 (1992).  *Sierra Club v. Meiburg*, 296 F.3d 1021, 1033 (11th Cir.

2002).  According to the court of appeals, in *Rufo*, "the Supreme [Court] said

that the party seeking modification of a consent decree must show, first, 'a

significant change either in factual conditions or in law,' and, second, that

'the proposed modification is suitably tailored to the changed circumstance.'"

*Id.* (quoting *Rufo*, 502 U.S. at 384, 391).  A party seeking modification of a

consent decree may satisfy the first prong of the test by demonstrating that

the consent decree has failed to achieve its purpose.  *FTC v. Garden of Life,

Inc.*, No. 06-80226-CIV, 2012 WL 1898607 at *3 (11th Cir. May 25, 2012).

While *Sierra Club* and *Garden of Life* concerned the modification of consent

decrees, the court applies the standard set forth in these cases to the

modification of the non-consent injunctions at issue in this case.

### B.    The Hi-Tech Order

The FTC states that the Hi-Tech Order's purpose is to protect the

public from deceptive claims and from the health risk posed by yohimbine-

containing supplements.  The FTC argues that the order should be modified

because it has failed to achieve this objective.  The basis for the FTC's motion

to modify the order is the Hi-Tech defendants' "pervasive and flagrant" order

violations and the expansion of their violative conduct.  While it is true that

the Hi-Tech defendants have violated the Hi-Tech Order, this is not sufficient

evidence to warrant modification.  The FTC has not demonstrated that the

Hi-Tech Order has failed to achieve its purpose.  Pursuant to this order, the

court has ordered compensatory sanctions to make affected consumers whole

and will order coercive incarceration if a complete recall is not completed.

The Hi-Tech defendants have not been able to skirt the Hi-Tech Order with

impunity.  The Hi-Tech Order, as currently drafted, remains capable of

achieving its objective provided those who are bound by the order comply.  If

the court were to grant the FTC's requested relief, then any violation of an

injunction would require modification of the injunction.  Furthermore, the

FTC has not presented other evidence that shows a significant change either

in the factual conditions or the law.[24]  The court does not address the second

---

[24] The court believes evidence that the Hi-Tech defendants are making claims
that violate the Hi-Tech Order through other dietary supplement companies
would qualify as a significant change to the factual conditions.  In this case,
the FTC has established only that Hi-Tech and Wheat have acquired other
dietary supplement companies.  The FTC has not established that these
companies make advertising claims that violate the Hi-Tech Order.

prong of the analysis, whether the proposed modification is suitably tailored to the changed circumstances.

### C.   The Wright Order

The FTC states that the Wright Order's purpose is to protect the public from Wright's deceptive claims, including his deceptive expert endorsements, by prohibiting him from making unsubstantiated representations about weight-loss products.  The FTC argues that the Wright Order has failed to achieve its purpose.  The court's analysis is different with respect to the Wright Order because Wright has consented to part of the FTC's request to modify the order.  Wright consents to a permanent injunction barring him from being an endorser or consultant in the dietary supplement business. The court believes this modification encompasses the first proposed modification by the FTC.  With respect to the remaining modifications sought by the FTC, the court concludes that the FTC has not demonstrated that the Wright Order has failed to achieve its purpose.  Nor has the FTC established a significant change either in the factual conditions or law.   Once again, the court does not address whether the proposed modification is suitably tailored to the changed circumstances.

**D.     Conclusion**

The court DENIES the FTC's motion to modify the Hi-Tech Order [Doc. No. 561]. The Hi-Tech Order remains in effect. The court GRANTS IN PART and DENIES IN PART the FTC's motion to modify the Wright Order [Doc. No. 562]. The court ORDERS that Wright be barred permanently from being an endorser or consultant in the dietary supplement business. The court AMENDS the Wright Order to include the additional limitation that Wright is barred from being an endorser or consultant in the dietary supplement business. The Wright Order remains in effect with the modification noted above.

## IV.   Motion to Show Cause[25]

The final issue for the court to address is the alleged unprofessional conduct of Stephen Dowdell, an attorney for the FTC. Hi-Tech and Wheat have filed a motion requesting that the court issue an order directing Dowdell to show cause why he should not be disciplined for unprofessional conduct [Doc. No. 615]. On May 9, 2012, Dowdell filed a notice of appearance on behalf of the FTC. He subsequently signed filings related to the ongoing garnishment efforts by the FTC against Hi-Tech and Wheat. Hi-Tech and

---

[25] The court GRANTS the FTC's motion for leave to file a surreply in opposition to Hi-Tech and Wheat's motion to show cause [Doc. No. 631].

Wheat argue that Dowdell engaged in the unauthorized practice of law and the unethical practice of law.  The court analyzes the motion for an order to show cause similar to a Rule 12(b)(6) motion: The court assumes the facts as alleged (in the motion for show cause) are true and asks whether those facts state a violation of Dowdell's professional obligations.

### A.    Unauthorized and Unethical Practice

Hi-Tech and Wheat allege that Dowdell engaged in the unauthorized practice of law by entering a notice of appearance and signing pleadings without being a member of the Georgia Bar or being admitted *pro hac vice*. The FTC admits that Dowdell engaged in the unauthorized practice of law but argues that the mistake was made in good faith because of his mistaken belief that he was eligible to practice in this district based on his previous position as an attorney with the United States Department of Justice.  Based on the court's review of this matter, the court finds that sanctions are not warranted against Dowdell for his unauthorized practice of law.[26]  Dowdell

---

[26] While counsel for Hi-Tech and Wheat argue that Dowdell should not be afforded leniency, they have committed a similar error in a related matter. *See Hi-Tech Pharmaceuticals, Inc. v. Federal Trade Commission*, 1:13-CV-4306-CAP (counsel for Hi-Tech made filings in this court prior to entry of appearance and without having applied to appear *pro hac vice*).  The court believes it is just and prudent to forego sanctions against Dowdell.  If the court were to impose sanctions against Dowdell for his unauthorized practice

may not appear before this court in this or any other matter until he has become a member of the Georgia Bar or is admitted *pro hac vice*.

In addition to allegations of unauthorized practice of law, Hi-Tech and Wheat allege that Dowdell engaged in the unethical practice of law by not including his bar number on the pleadings he signed and submitted to this court and by making repeated and deliberate misstatements of the truth. The specific allegations of Dowdell's misstatements of truth include the following: (1) the date on which demand of payment was made, (2) the certificate of service, and (3) the date he sent the writs of garnishment to the banking institutions.  Hi-Tech and Wheat withdrew the first allegation based on its misreading of the relevant statutory provision.  However, they continue to assert the remaining allegations.  The FTC denies both of the remaining allegations of misconduct by Dowdell.  After careful review of the motion and accompanying briefs, the court finds that Hi-Tech and Wheat have not set forth sufficient factual allegations to support its claims of unethical conduct by Dowdell.

---

of law, the court would consider sanctions against counsel for Hi-Tech and Wheat in the related matter.

**B.     Pending Motions for Entry of Final Disposition Order**

The parties brought the issue of Dowdell's unauthorized practice to the court's attention after the court had already entered previous final disposition orders improperly filed by Dowdell.  The court does not invalidate these orders.  However, there are two motions pending for entry of final disposition orders in garnishment against SunTrust Bank [Doc. No. 577] and Quantum National Bank [Doc. No. 583].  Both motions were filed prior to Hi-Tech and Wheat's motion to show cause, and the motions are signed by Dowdell.  The court denies the motions as improperly filed.  The court grants the FTC leave to file renewed motions signed by an attorney with the requisite authority to sign the motions.

**C.     Conclusion**

The court DENIES Hi-Tech and Wheat's motion for an order to show cause [Doc. No. 615].  The court DENIES the FTC's motions for entry of final disposition order as improperly filed [Doc. No. 577 and 583].  However, the court GRANTS the FTC leave to file renewed motions signed by an attorney with the requisite authority to sign the motions.

**V.     Conclusion**

The court ORDERS disgorgement of $40,120,950 in compensatory sanctions to redress consumers.  The court DIRECTS the clerk of the court to

enter a judgment against Hi-Tech, Wheat, and Smith, jointly and severally, in the amount of $40,000,950.  The court DIRECTS the clerk of the court to enter a judgment against Wright in the amount of $120,000.  The parties are ORDERED to administer the compensatory sanctions as directed in Section II.B., page 24, of this order.  The court ORDERS Hi-Tech, Wheat, and Smith to recall all Fastin, Lipodrene, Benzedrine, and Stimerex-ES with violative product packaging and labels from retail stores.  The parties are ORDERED to notify the court of the status of the recall as directed in this order.  The court DENIES the FTC's motion to modify the Hi-Tech Order [Doc. No. 561], and GRANTS IN PART and DENIES IN PART the FTC's motion to modify the Wright Order [Doc. No. 562].  The court DENIES Hi-Tech and Wheat's motion for an order to show cause [Doc. No. 615].  The court DENIES the FTC's motions for entry of final disposition order as improperly filed [Doc. No. 577 and 583].  However, the court GRANTS the FTC leave to file renewed motions signed by an attorney with the requisite authority to sign the motions.  The court GRANTS the FTC's motion for leave to file a surreply in opposition to Hi-Tech and Wheat's motion to show cause [Doc. No. 631].

**SO ORDERED** this 14th day of May, 2014.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge