UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

FEDERAL TRADE COMMISSION,

      Plaintiff,

   v.

NATIONAL UROLOGICAL GROUP, INC., *et al.*

      Defendants.
_____

1:04-CV-3294-CAP

## PLAINTIFF'S MOTION SEEKING ENTRY OF CONTEMPT JUDGMENT RELATING HI-TECH PHARMACEUTICALS, INC., JARED WHEAT, AND STEPHEN SMITH'S VIOLATION OF SECTION VI AND THE IMPOSITION OF COMPENSATORY SANCTIONS

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF MATERIAL FACTS ............................................... 2

     A.    Parties to the Contempt Action:  Contempt Defendants ..................... 2

         1.    Hi-Tech Pharmaceuticals, Inc. ........................................ 2

         2.    Contempt Defendant Jared Wheat ................................. 3

         3.    Contempt Defendant Stephen Smith ............................. 3

     B.    The Hi-Tech Order ..................................................................... 4

     C.    Contempt Defendants' Violative Advertising Practices ...................... 4

     D.    Consumer Injury Resulting from the Sale of the Challenged
         Products. ................................................................................... 7

III.  THE COMMISSION IS ENTITLED TO A FINDING OF CONTEMPT
     AS A MATTER OF LAW. ................................................................. 7

     A.    Contempt Defendants' Failure to Include the Required
         Yohimbine Health Risk Warning on Their Product Packaging
         and Labeling Violates Section VI of the Hi-Tech Order. ...................... 8

     B.    Hi-Tech's Gross Revenues Less Refunds and Returns Are the
         Necessary and Appropriate Compensatory Sanction. ...................... 11

IV.  CONCLUSION ............................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Fed. Trade Comm'n v. BlueHippo Funding, LLC*, 762 F.3d 238 (2d Cir. 2014) ........... 12

*Fed. Trade Comm'n v. Febre*, 128 F.3d 530 (7th Cir. 1997) ............................................. 11

*Fed. Trade Comm'n v. Figgie Int'l Inc.*, 994 F.2d 595 (9th Cir. 1993) .......................... 12

*Fed. Trade Comm'n v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) .................... 11, 12, 14

*Fed. Trade Comm'n v. Leshin*, 618 F.3d 1221 (11th Cir. 2010) ................................ 12, 13

*Fed. Trade Comm'n v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167 (N.D. Ga. 2008) . 12

*Fed. Trade Comm'n v. Nat'l Urological Grp.*, 785 F.3d 477 (11th Cir. 2015) ................ 2

*Fed. Trade Comm'n v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991) 12

*Fed. Trade Comm'n v. Trudeau*, 579 F.3d 754 (7th Cir. 2009) ...................................... 14

*Fed. Trade Comm'n v. Trudeau*, 662 F.3d 947 (7th Cir. 2011) ...................................... 12

*In re Waczewski*, 241 F. App'x 647 (11th Cir. 2007) ..................................................... 10

*Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292 (11th Cir. 2011) ......... 7

*Kraft, Inc. v. Fed. Trade Comm'n*, 970 F.2d 311 (7th Cir. 1993) ................................... 12

*McComb v. Jacksonville*, 336 U.S. 187 (1949) ................................................................ 11

*McGregor v. Chierico*, 206 F.3d 1378 (11th Cir. 2000) ........................................... 11, 12

*Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 724 F.2d 1456 (11th Cir. 1983) ... 10

*United States v. Ben Zvi*, 242 F.3d 89 (2d Cir. 2001) ...................................................... 10

*United States v. Escobar-Urrego,* 110 F.3d 1556 (11th Cir. 1997) ................................ 10

*Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243 (D.C. Cir. 1987) ......... 10

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................................................... 7

## I.      INTRODUCTION

There is no dispute that from January 1, 2009, through at least December 31, 2012, Contempt Defendants Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), Jared Wheat, and Stephen Smith (collectively, "Contempt Defendants") failed to include the yohimbine-related health warning required by Section VI of the Hi-Tech Order.[1]  Indeed, this Court has already found as a matter of undisputed fact that during that period:  1) Contempt Defendants' product packaging and labels contained efficacy claims; and 2) none of the product packaging and labels contained the health-risk warning required by the Hi-Tech Order.  Dkt. No. 524 at 23-24.

Contempt Defendants admit that they did not contest the Court's finding in their recent appeal nor were they asking the Eleventh Circuit to reverse the Court's findings relative to Section VI.  *See* Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Statement of Material Facts") ¶ 85 (citing Plaintiff's Ex. 500, Appellants' Response in Opp. to Mot. for Clarification at 1, *Fed. Trade Comm'n v. Hi-Tech Pharmaceuticals*, *Inc.*, Case No. 14-13131 (11th Cir. June 18, 2015)) ("Contempt Defendants did not appeal the contempt finding as to Section

[1] "Hi-Tech Order" refers to the Final Judgment and Permanent Injunction Against National Urological Group, Inc., Hi-Tech Pharmaceuticals, Inc.  Jared Wheat, Thomasz Holda, and Stephen Smith (Dkt. No. 230)

VI of the injunction, which required a specific warning on products that contained yohimbine.").

Despite the fact that Contempt Defendants did not appeal this Court's finding with regard to Section VI, the Eleventh Circuit vacated the entire finding of contempt against Hi-Tech, Wheat and Smith. *See Fed. Trade Comm'n v. Nat'l Urological Grp.*, 785 F.3d 477, 483 (11th Cir. 2015) (remanding proceedings). Thus, the FTC brings the present motion so that the Court may: 1) reinstate its contempt finding against Hi-Tech, Wheat, and Smith for their violation of Section VI of the Hi-Tech Order; and 2) impose a compensatory sanction in the amount of $34,431,227 – Hi-Tech's revenues for the period where they omitted the material safety warning.

## II.      STATEMENT OF MATERIAL FACTS

### A.      Parties to the Contempt Action:  Contempt Defendants[2]

#### 1.      Hi-Tech Pharmaceuticals, Inc.

Contempt Defendant Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), is a Georgia corporation with its principal place of business at 6015 Unity Drive, Suite B, Norcross, Georgia.  *See* Statement of Material Facts ¶ 1.  Hi-Tech manufactures, numerous weight-loss dietary supplements, including Fastin,

---

[2] There is no dispute that all three Contempt Defendants received copies of the Orders.  *See* Statement of Material Facts ¶¶ 44-46.

Lipodrene, Benzedrine, and Stimerex-ES.  *Id.* ¶ 4.  Hi-Tech markets itself as

offering a "revolutionary line of neutraceutical products . . . at the forefront of the

dietary supplement industry."  *Id.* ¶ 2.  Hi-Tech primarily sells their products to

consumers through third-party retailers and Internet distributors.  *Id.* ¶¶ 5, 7.  In

total, Hi-Tech's products are sold at over 100,000 locations nationally.  *Id.* ¶ 5.

### 2.      Contempt Defendant Jared Wheat

Contempt Defendant Jared Wheat is the sole owner of Hi-Tech.  *See*

Statement of Material Facts.  ¶ 8.  He is also the company's President, Chief

Executive Officer, Secretary, and Treasurer.  *See id.*  Wheat controls all aspects of

Hi-Tech's weight-loss product marketing, including packaging and labeling.  *See*

*id*. ¶ 11-14.

### 3.      Contempt Defendant Stephen Smith

Contempt Defendant Stephen Smith is Hi-Tech's Senior Vice-President in

charge of sales, overseeing Hi-Tech's sales force.  Statement of Material Facts

¶¶ 19-20.  Smith is personally responsible for retail accounts at food stores, drug

chains, and mass merchandisers, such as CVS, Rite Aid, and GNC.  *Id.* ¶ 22.

These retail chains comprise the majority of Hi-Tech's business.  *Id.* ¶ 7.  As part

of his duties as Senior Vice-President in charge of sales, Smith made

presentations to brokers in order to "give them the sales tools they would need"

to make sales pitches to retailers about the products.  *Id.* ¶ 24.  Those sales tools

would include images of the product labels.  *Id.* ¶¶ 24-25.  Smith also attended

trade shows on behalf of Hi-Tech where he would pitch Hi-Tech's products,

including Fastin, Lipodrene, and Benzedrine, using JPEG or PDF images of the

product labels and packaging.  *Id.* ¶ 25.

### B.    The Hi-Tech Order

On December 16, 2008, this Court entered the Hi-Tech Order against

Contempt Defendants.  Statement of Material Facts ¶ 35.  Most relevant to the

present motion, Section VI of the Hi-Tech Order (titled "WARNING OF

HEALTH RISKS OF YOHIMBINE") requires Hi-Tech, Wheat, and Smith to

include the following health-risk warning on any advertisement, product

package, or product label that makes efficacy claims relating to yohimbine-

containing products:

> **WARNING**:   This product can raise blood pressure and
> interfere with other drugs you may be taking.  Talk to your
> doctor about this product.

*Id.* ¶ 36.

### C.    Contempt Defendants' Violative Advertising Practices

Despite the Hi-Tech Order's clear prohibitions, between January 1, 2009

and at least December 31, 2012, Contempt Defendants have widely disseminated

4

the product packaging and labels for four of their weight-loss products, Fastin, Lipodrene, Benzedrine, and Stimerex-ES that violate Section VI.  Statement of Material Facts ¶¶ 70-86.  Specifically, Contempt Defendants have disseminated these violative packages and labels in the over 100,000 retail locations through which they sell their products national.  *Id*. ¶ 5.

Fastin, Lipodrene, Benzedrine, and Stimerex-ES all contain yohimbine.  *See* Statement of Material Facts ¶ 74.  Moreover, as this Court has already found, during the relevant time period, ***all*** of the product packaging and labels for each of the four products make efficacy claims.  *See* Dkt. No. 524 at 23-24; Statement of Material Facts ¶¶ 75-79.  Specifically, on each and every product package and label for Fastin, Contempt Defendants touted the product's ability to cause rapid or substantial weight and fat loss, increase metabolism, and curb appetite:

- "WARNING: EXTREMELY POTENT DIET AID!  DO NOT CONSUME UNLESS RAPID FAT AND WEIGHT LOSS ARE YOUR DESIRED RESULT."  Statement of Material Facts ¶ 76  (caps original).
- "EXTREME WEIGHT LOSS GUARANTEEED!"  *Id.* (caps original)
- "Rapid Fat Loss."  *Id.*
- "Rapid Fat Loss Catalyst." *Id*.
- "Increases the metabolic rate promoting thermogenesis  (the burning of stored body fat)"  *Id*.
- "Fastin has both immediate and delayed release profiles for appetite suppression, energy, and weight loss."  *Id.*

All of the product packaging and labels for Lipodrene made similar efficacy claims:

- "LIPODRENE WILL CAUSE RAPID FAT AND WEIGHT LOSS WITH USAGE."  Statement of Material Facts ¶ 77 (caps original).
- "Increases the metabolic rate, promoting thermogenesis (the burning of stored body fat)."  *Id.*
- "FOR ADVANCED APPETITE CONTROL AND METABOLIC STIMULATION."  *Id.*
- "Slows the absorption of serotonin which helps in weight management by controlling food cravings and supressing [sic] the appetite."  *Id.*

Similarly, the product packaging and labels for Benzedrine and Stimerex-ES contained efficacy claims.  Specifically, Contempt Defendants used product packaging and labels to tout Benzedrine's purported ability to cause fat loss, claiming that the product would "annihilate the fat."  Statement of Material Facts ¶ 78.  And, they claimed that Stimerex-ES was a "Fat Burner/Energizer" and a "High Performance Thermogenic Intensifier for Maximum Fat Loss."  Statement of Material Facts ¶ 79.

Nonetheless, as the Court found, and as Contempt Defendants have admitted, none of Contempt Defendants' labels or packaging for the four products included the health-risk warning required under Section VI of the Hi-Tech Order.  *See* Dkt. No. 524 at 23-24; Statement of Material Facts ¶¶ 81-85.

**D.** **Consumer Injury Resulting from the Sale of the Challenged Products.**

The vast majority of Contempt Defendants' sales of the challenged products are not made directly to consumers.  Statement of Material Facts ¶¶ 5,7. Instead, Contempt Defendants primarily sell their products at wholesale to retail outlets and Internet distributors.  *Id.*  In total, between January 1, 2009 and December 31, 2012, Contempt Defendants received $34,431,227 from the sale of the four products (*i.e.*, their gross revenues less consumer remittances).  *Id.* ¶ 112.[3]

**III. THE COMMISSION IS ENTITLED TO A FINDING OF CONTEMPT AS A MATTER OF LAW.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011).  Here, the FTC is entitled to judgment as a matter of law that Hi-Tech, Wheat, and Smith have violated Section VI of the Hi-Tech Order because there is

---

[3] Specifically, Hi-Tech's revenues for each year is as follows:  (a) 2009: $6,459,393; (b) 2010: $6,011,475; (c) 2011: $13,369,596; (d) 2012: $8,600,763.  Statement of Material Facts ¶¶ 96, 101, 106, 111.

no dispute that they failed to include the required health-risk warning on its labels and product packaging. Indeed, the Court already found that this failure constitutes a violation of Section VI, and Contempt Defendants did not appeal that finding, making it the law of the case.

Moreover, because Contempt Defendants' conduct constitutes a pattern or practice of contempt, specifically through a material omission regarding the safety of their products, a compensatory sanction of $34,431,227 is necessary to compensate consumers for the losses they sustained as a result of Contempt Defendants' violation of Section VI.

### A. Contempt Defendants' Failure to Include the Required Yohimbine Health Risk Warning on Their Product Packaging and Labeling Violates Section VI of the Hi-Tech Order.

Section VI of the Hi-Tech Order requires Hi-Tech, Wheat, and Smith to place the following health-risk warning on "any advertisement[4], promotional material, or product label for any covered product[5] or program containing yohimbine that contains any representation about the efficacy, benefits, performance, safety or side effects of such product":

---

[4] The Hi-Tech Order's definition of "advertisement" includes product packaging. *See* Statement of Material Facts ¶ 39.

[5] "Covered product or service" is defined as "any health-related service or program, weight loss product, erectile dysfunction product, dietary supplement, food, drug, or device." Statement of Material Facts ¶ 40.

> **WARNING:**   This product can raise blood pressure and interfere with other drugs you may be taking.  Talk to your doctor about this product.

Statement of Material Facts ¶ 36.  As demonstrated above, and as the Court previously found, the labels and product packaging for each of Contempt Defendants' weight-loss products contain express claims about the efficacy and benefits of the products.  *See* Section II.B, *supra; see also* Dkt. 524 at 23-24; Statement of Material Facts ¶¶ 75-79.

Moreover, from entry of the Hi-Tech Order through late 2012, Contempt Defendants did not include the health-risk warning on the packaging and labels for their yohimbine-containing products.  Statement of Material Facts ¶¶ 81-82. Indeed, a Federal Trade Commission investigator was able to purchase a 30-count package of Fastin that did not contain the health-risk warning on the external packaging that was visible to consumers at the point of purchase on August 2, 2013.  Statement of Material Facts ¶ 86.[6]  Thus, as the Court previously found, there is no genuine dispute of material fact that, from January 1, 2009, through at least December 31, 2012, Contempt Defendants failed to include the

---

[6] It appears that the label on the bottle of Fastin did contain the warning.  *See* Plaintiff's Ex. 146.  However, that label would not be visible to a consumer at the point of purchase unless he or she actually removed the bottle from the box.

required health-risk warning in violation of Section VI of the Hi-Tech Order.

Dkt. No. 524 at 23-24.

Critically, Hi-Tech, Wheat, and Smith readily admit that they did not appeal the Court's finding that their failure to include the required safety warnings violated Section VI of the Hi-Tech Order. *See* Statement of Material Facts ¶ 85. Their failure to appeal the Court's liability determination precludes relitigation of their contempt liability for their violations of Section VI. *See United States v. Escobar-Urrego,* 110 F.3d 1556, 1560 (11th Cir. 1997). Indeed, as the Eleventh Circuit noted:

> Under the law of the case doctrine, a legal decision made at one stage of the litigation, ***unchallenged in a subsequent appeal when the opportunity existed***, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.

*Id.* (quoting *Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243, 250 (D.C. Cir. 1987)) (emphasis added); *see also United States v. Ben Zvi*, 242 F.3d 89, 96 (2d Cir. 2001) ("[I]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.") (citations omitted); *Silverberg v. Paine, Webber, Jackson &*

*Curtis, Inc.*, 724 F.2d 1456, 1457 (11th Cir. 1983).[7]  Accordingly, the contempt

finding against Hi-Tech, Wheat, and Smith for violations of Section VI of the Hi-

Tech Order must be reinstated.

### B.   Hi-Tech's Gross Revenues Less Refunds and Returns Are the Necessary and Appropriate Compensatory Sanction.

The undisputed facts in this case necessitate the imposition of a

compensatory contempt sanction.  As established in Section III.A, from January

1, 2009 through December 31, 2012, Contempt Defendants violated the Hi-Tech

Order by making efficacy claims on its product packaging and labels while

omitting the required health-risk warning.

The appropriate compensatory sanction is a matter of well-established law.

Specifically, the sanction must be sufficient to provide consumers with "full

remedial relief."  *McComb v. Jacksonville*, 336 U.S. 187, 193 (1949).  In order to fix

the amount of the sanction, the FTC need only reasonably approximate the

amount of consumer injury, at which point the burden shifts to Contempt

Defendants to show that the figures are inaccurate.  *See Fed. Trade Comm'n v.*

*Kuykendall*, 371 F.3d 745, 766 (10th Cir. 2004) (en banc) (citing *Fed. Trade Comm'n*

---

[7]  Moreover, even if relitigation is not barred by law of the case doctrine, it is barred by the waiver doctrine.  *See In re Waczewski*, 241 F. App'x 647, 651 n.7 (11th Cir. 2007) (barring appellant from raising issue that "was ripe and should have been timely raised in the first appeal").

*v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997)).  The measure of compensatory

sanctions must only be proven by a preponderance of the evidence.  *McGregor v.*

*Chierico*, 206 F.3d 1378, 1387 (11th Cir. 2000).

Where defendants violate a court order by making widely disseminated

material misrepresentations or omissions, the FTC is entitled to a presumption

that each individual consumer relied upon the misrepresentations or omissions

and, thus, disgorgement of gross receipts (less any refunds or returns) is the

appropriate compensatory baseline.  *See McGregor*, 206 F.3d at 1388 (citing *Fed.*

*Trade Comm'n v. Figgie Int'l Inc.*, 994 F.2d 595, 605 (9th Cir. 1993) (per curiam) and

*Fed. Trade Comm'n v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir.

1991)); *see also Fed. Trade Comm'n v. Leshin*, 618 F.3d 1221, 1237 (11th Cir. 2010)

(awarding gross revenues as compensatory contempt sanction and rejecting

profits as an alternative measure of sanctions); *Fed. Trade Comm'n v. BlueHippo*

*Funding, LLC*, 762 F.3d 238, 244 (2d Cir. 2014); *Fed. Trade Comm'n v. Trudeau*, 662

F.3d 947, 950 (7th Cir. 2011); *Kuykendall*, 371 F.3d at 765.

Here, there is no question that Contempt Defendants' violations were both

material and widespread.  Specifically, the required health-risk warning clearly

related to the products' safety, or lack thereof.  As the Court has previously

recognized, "when a customer makes a decision to purchase a health product

that he or she will ingest for purported health benefits . . . any claims regarding the safety of the product will be presumed material." *Fed. Trade Comm'n v. Nat'l Urological Grp.*, 645 F. Supp. 2d 1167, 1191 (N.D. Ga. 2008); *see also Kraft, Inc. v. Fed. Trade Comm'n*, 970 F.2d 311, 322-23 (7th Cir. 1993).

Similarly, there is no dispute that the omissions were widespread. Specifically, from 2009 through 2012, Contempt Defendants omitted the safety warning from *every* bottle and box of Fastin, Lipodrene, Benzedrine, and Stimerex-ES.  Statement of Material Facts ¶¶ 81-82.[8]  As Contempt Defendants admit those products were sold primarily at retail, including at national retail chains such as CVS, Rite Aid, and GNC.  *Id.* ¶¶ 5, 7.  Thus, Contempt Defendants' gross revenues less refunds and returns are the appropriate compensatory baseline. *See Leshin*, 618 F.3d at 1237.[9]

It is undisputed that between January 1, 2009, and December 31, 2012, Contempt Defendants' revenues attributable to the four products – less customer

---

[8]  Using the end of 2012 as the endpoint of the compensatory sanctions calculation is extremely conservative given that the evidence shows that violative packages of Fastin, Contempt Defendants' top selling weight loss product, were available at CVS – a large retailer – until as late as August 2013.  *See* Statement of Material Facts ¶ 86; *see also* n.6, *supra*.

[9]  The FTC did not previously ask the Court to separately calculate the sanction related to Contempt Defendants' violation of Section VI because it was wholly subsumed within the sanction for Contempt Defendants' material misrepresentations under Sections II and VII.

remittance deductions – totaled \$34,431,227.  Statement of Material Facts ¶ 112.[10]

Accordingly, a compensatory sanction in that amount should be awarded jointly

and severally against Contempt Defendants Hi-Tech, Wheat, and Smith.  *See*

*Leshin*, 618 F.3d at 1236-37 ("Where . . . parties join together to evade a judgment,

they become jointly and severally liable for the amount of damages from the

contumacious conduct.") (ellipses original).[11]

## IV.    CONCLUSION

Because there are no factual disputes regarding Contempt Defendants'

liability for their violations of Section VI of the Hi-Tech Order, nor any disputes

regarding the revenues generated through their sale of products bearing the

violative packaging and labels.  Accordingly, the FTC respectfully requests that

the Court:  1) enter a finding of contempt against Hi-Tech, Wheat, and Smith for

---

[10]  The revenue figures were provided by Contempt Defendants' damages expert
James Hart.  *See* 1/23/14 Trial Tr. at 140:18-141:10.

[11]  Once the FTC has provided a reasonable approximation of the appropriate
compensatory sanction, the burden shifts to the Contempt Defendants to
demonstrate that certain amounts should be offset from their gross revenues
"because certain consumers received refunds or were satisfied with their
purchases."  *Kuykendall*, 371 F.3d at 766; *see also Fed. Trade Comm'n v. Trudeau*, 579
F.3d 754, 773 (7th Cir. 2009).  Because Contempt Defendants' expert subtracted
"customer remittance deductions" from Hi-Tech's total billings for the four
products, the \$34,431,227 figure already takes into account refunds and returns.
*See* Statement of Facts ¶ 96, 101, 106, 111-112.  Moreover, Contempt Defendants'
expert identified no additional deductions from Contempt Defendants' revenues
that should be taken to account for refunds or satisfied consumers.

14

their violation of Section VI of the Hi-Tech Order and 2) enter a compensatory

sanction in the amount of $34,431,227.

### CERTIFICATION PURSUANT TO LOCAL RULE 7.1(D)

Pursuant to Local Rule 7.1(D), I hereby certify that this motion was

prepared in Microsoft Word 2010 using 13-point Book Antiqua font.

/s/ Amanda C. Basta
Amanda C. Basta

Dated:  August 20, 2015

Respectfully submitted,

/s/ Amanda C. Basta
AMANDA C. BASTA
abasta@ftc.gov
AMANDA B. KOSTNER
akostner@ftc.gov
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Mailstop CC-9528
Washington, DC  20580
Tel.:   (202) 326-2340 (Basta);
          (202) 326-2880 (Kostner)
Fax:   (202) 326-3197

/s/ Cindy A. Liebes
Cindy A. Liebes (Bar No. 451976)
FEDERAL TRADE COMMISSION
SOUTHEAST REGION
225 Peachtree Street, Room 1500
Atlanta, GA 30303
Tel.:   (404) 656-1359
Fax:   (404) 656-1379
Attorneys for the Plaintiff

15