UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

_____

FEDERAL TRADE COMMISSION,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
NATIONAL UROLOGICAL GROUP, INC., et al., )
　　　　　　　　　　　　　　　　　　)　　　1:04-CV-3294-CAP
　　　　　　　　Defendants.　　　　　)
　　　　　　　　　　　　　　　　　　)
_____ )

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM A JUDGMENT, AND FOR AN ACCOUNTING

### Introduction

Defendants Hi-Tech Pharmaceuticals, Inc., Jared Wheat, and Stephen Smith's (collectively "Defendants") motion for relief from a judgment, and for an "accounting" of the redress conducted by the Federal Trade Commission ("FTC"), is wholly without merit.   Defendants make their request for relief pursuant to Federal Rules of Civil Procedure 60(b)(5) and (6), but fail to offer any reason why applying the judgment "is no longer equitable," or any exceptional circumstances justifying relief.   Instead, they argue the Supreme Court decision in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021) justifies relief from the Contempt Judgment.   It does not, because the ruling does not apply

retroactively to this Court's Final Judgment, and because the ruling in *AMG* concerned the Court's authority to order monetary relief pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b)(2), not, as occurred here, pursuant to its inherent authority to impose compensatory sanctions in contempt proceedings. Defendants' request for an accounting fares no better because Defendants cite no authority, because no such authority exists, that permits them to make such a request, much less obtain the relief they seek.

## Background

### A. The 2008 Judgment

In December 2008, the Court issued a Final Judgment and Permanent Injunction with a monetary judgment against Defendants pursuant to Section 13(b) of the FTC Act for $15,882,436.00 (the "2008 Judgment") (Dkt. 230).   The FTC ultimately collected the entirety of this amount, despite Defendants' extensive efforts to hide assets.   *See, e.g.*, Dkt. 966 at 131 ("Hi-Tech defendants repeatedly provided inaccurate and incomplete information in compliance reports submitted to the FTC, and they did not attempt in good faith to pay the underlying 2008 judgment.").[1]   Indeed, Defendants voluntarily paid only

---

[1] *See also* Dkt. 650 at 20 ("On April 25, 2013, Wheat withdrew $1,000,000 from a bank account with East-West Bank."); *id.* ("Between 2012 and 2013, Wheat received millions of dollars in dividends from Hi-Tech.   On January 8, 2013, Wheat entered into a contract to purchase a Lamborghini Gallardo for $135,087

$150,000 toward this judgment.    (Dkt. 650 at 19).    Notably, the 2008 Judgment states, "Defendants . . . shall have no right to challenge the Commission's choice of remedies under this Paragraph or the manner of distribution chosen by the Commission."    (Dkt. 230 at 19).[2]    The 2008 Judgment also states that if "the Commission in its sole discretion determines that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the practices of the Defendants."    (*Id.* at 18-19).    Any funds remaining after that equitable relief "shall be deposited to the United States Treasury."    (*Id.* at 19).    The Eleventh Circuit affirmed the 2008 Judgment, and the Supreme Court denied Defendants' *certiorari* petitions.    (Dkt. 277; *see also Nat'l Urological Grp., Inc. v. FTC*, 562 U.S. 1003 (2010)).

## B. The 2017 Contempt Judgment

In November 2011, the FTC filed a contempt motion, based on Defendants' violations of the Court's 2008 Judgment enjoining unsubstantiated weight loss

---

. . . and paid the balance of the purchase price on January 11, 2013.").

[2] The Court's 2008 Judgment also states that the monetary remedy "shall [not] be deemed payment of any fine, penalty, or punitive assessment" (Dkt. 230 at 19) and prohibits Defendants from making certain false or unsubstantiated weight- and fat-loss claims.    (*Id.* at 10-13).

claims.   In October 2017, after a two-week trial, the Court held Defendants in

contempt, finding "the record . . . replete with evidence . . . showing an

intentional defiance of the court's injunctions" and that the "defendants very

clearly exhibited a pattern of contemptuous conduct since these proceedings

began."   (Dkt. 966 at 131).

To remedy the harm Defendants caused, the Court imposed $40,000,950 in

compensatory sanctions.   (Dkt. 966 at 132) ("Contempt Judgment").[3]   Unlike

the 2008 Judgment, issued pursuant to Section 13(b) of the FTC Act, the Court

issued its Contempt Judgment pursuant to the Court's inherent authority to

enforce its Orders through compensatory contempt sanctions.   (Dkt. 966 at 127-

31).   Defendants have not paid a single dollar toward that $40 million judgment

voluntarily.   Instead, the FTC has collected $2,291,087.97 through garnishment.

---

[3] Defendants suggest they need not pay the full $40 million contempt judgment: "the FTC can offer no reason as to why any consumers who are supposed to benefit from the $40 Million Judgment cannot simply be provided with redress from unclaimed refund checks issued in connection with the $15.9 Million Judgment, as well as funds from this judgment never allocated to consumers." (Dkt. 1101-1 at 26-27).   Defendants harmed two different groups of consumers at two different times and in violation of two different legal commands (the FTC Act and the Court's 2008 Judgment).   To permit defendants such as these to use the proceeds of one fraud to compensate the victims of a second, separate fraud would perversely incentivize them to take steps to frustrate the Commission's collections and redress efforts, while providing no deterrence against future fraudulent conduct.

(*See* unnumbered docket entries dated Jan. 14, 2020; Sept. 29, 2020; and Oct. 21, 2020).   Those funds are now in the Court's registry.

The Eleventh Circuit affirmed the Contempt Judgment in March 2020 (Dkt. 1090; *see also FTC v. Nat'l Urological Grp., Inc.*, No. 17-15696-AA, 2020 U.S. App. LEXIS 2914 (11th Cir. Jan. 29, 2020)), and the Supreme Court denied Defendants' Petition for a *Writ of Certiorari* in November 2020 (Dkt. 1095).   Thus, neither the 2008 Judgment nor the Contempt Judgment is under review.

## Argument

Defendants, citing Rule 60, seek relief from the Contempt Judgment, and, citing no relevant authority, an order compelling an accounting of the funds collected under the 2008 Judgment and the Contempt Judgment.[4]   Both arguments fail.

---

[4] Defendants have previously employed similar tactics to avoid responsibility for the injury they caused consumers.   Specifically, in 2014, Defendants filed a Motion for Partial Relief from the 2008 Judgment.   Similar to the motion at hand, Defendants argued, pursuant to Rule 60(b)(5) and (6), that the Court should "reexamine the equity and continuing fairness of the Judgment."   (Dkt. 642-1). The Court rejected Defendants' arguments, explaining that "[r]elief under Rule 60(b)(6) is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances, and that, absent such relief, an extreme and unexpected hardship will result."   (Dkt. 720 at 3 (quoting *Rease v. AT&T Corp.*, 358 F. App'x 73, 75 (11th Cir. 2009) (internal quotation marks omitted))).

### A.   Rule 60 Does Not Support Relief from the Contempt Judgment.

Relief under Rule 60(b)(5) requires Defendants to show that enforcement of their judgment is no longer equitable.   Relief under Rule 60(b)(6) requires Defendants to prove "exceptional circumstances" to justify the "extraordinary" remedies they seek.   (Dkt. 720 at 3).   Defendants invoke both provisions to justify their request for relief from the Contempt Judgment.[5]   Their arguments fail for three reasons.   First, *AMG* does not apply retroactively and therefore has no effect on Defendants' final judgment.   Second, Rule 60(b)(5)'s equitable-relief provision does not apply to monetary judgments entered to remedy past harms.   Third, Defendants cannot establish the exceptional circumstances required by Rule 60(b)(6) because *AMG* has no applicability to courts' inherent authority to order compensatory sanctions to remedy order violations.

### 1.   The ruling in *AMG* does not impact Defendants because Supreme Court rulings do not have a retroactive effect on closed cases.

After multiple attempts to evade this Court's orders, Defendants now pin their hopes on *AMG.*   However, Supreme Court rulings only have so-called "retroactive effect" on "cases still open on direct review."   *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993); *James B. Beam Distilling Co. v. Ga.*, 501 U.S. 529,

---

[5] Defendants' discussion of 60(b)(5) and 60(b)(6) is muddled, but we discuss these two distinct rules separately for clarity's sake.

541 (1991) ("[R]etroactivity in civil cases must be limited by the need for finality . . . a new rule cannot reopen the door already closed.").

Defendants seek relief from the Contempt Judgment, entered in 2017, which is not open on direct review by *any* court.[6]   By filing their motion pursuant to Rule 60(b) – which addresses only relief from "a Final Judgment, Order, or Proceeding" – Defendants acknowledge this finality.   Therefore, the ruling in *AMG* provides no basis for relief in this case.

### 2.    Rule 60(b)(5) does not apply to monetary judgments remedying past harms.

Defendants nevertheless claim "equity now demands" they be relieved of the Contempt Judgment because "applying it prospectively is no longer equitable."   (Dkt 1101-1 at 18; Fed R. Civ. P. 60(b)(5)).   It is no surprise that, while making this argument, Defendants urge the Court not to "concern itself" with this case's "complex factual and procedural history."   (Dkt. 1101-1 at 21). The Court aptly summarized that history in the Contempt Judgment.

---

[6]  In contrast, Defendants cite a string of cases to support the contention that "federal courts are recognizing the import of *AMG Capital* in similar cases" that are either in litigation or on appeal.   Defendants cite no similarly situated (*i.e.*, final) case to which federal courts have applied *AMG*.   (Dkt. 1101-1 at 17). Similarly, Defendants' reliance on the Court's "power to accommodate the effect of a new law on a *still pending case*" is misplaced because this case is not still pending.   (Dkt. 1101-1 at 18 (quoting *Telecomm Tech. Services, Inc. v. Siemens Rolm Comms., Inc.*, 150 F. Supp. 2d 1365, 1367 (N.D. Ga. 2000) (emphasis added)).

Specifically, it described "defendants' contumacious conduct" as "significant" and the record as "replete with evidence – both direct and circumstantial – showing an *intentional defiance of the court's injunctions*," in addition to evidence that the defendants "repeatedly provided inaccurate and incomplete information in compliance reports submitted to the FTC" and "did not attempt in good faith to pay the underlying 2008 judgment."   (Dkt. 966 at 131 (emphasis added)). Troublingly, Defendants use their failure to pay a single cent of the Contempt Judgment as a point in their favor by arguing that the FTC's collection efforts are still in their "early stages."   (Dkt. 1101-1 at 7.)   Essentially, they argue that their failure to compensate the consumers they victimized provides an equitable basis for the court to use powers that do not exist to discretionarily apply *AMG* retroactively.

Even if this patently absurd argument had merit, Defendants still cannot meet the requirements of Rule 60(b)(5) because this provision only applies to judgments that have "prospective effect" rather than "those that offer a present remedy for a past wrong."   *Griffin v. Sec'y, Fla Dep't of Corr.*, 787 F.3d 1086, 1091 (11th Cir. 2015) (quoting *Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980)).   Judgments have a "prospective effect," and are eligible for Rule 60(b)(5) relief, only when they "involve the supervision of changing conduct or

conditions." *Id.* at 1091 (quoting *United States v. Swift & Co.*, 286 U.S. 106, 52 S. Ct. 460 (1932)).   For this reason, "judgments awarding current monetary damages for past wrongdoing," like the Contempt Judgment here, "are properly considered retroactive" and are not eligible for Rule 60(b)(5) relief.   *United States v. Eyler*, 778 F. Supp. 1553, 1557 (M.D. Fla. 1991).   The lone Rule 60(b)(5) case cited by Defendants is distinguishable on this basis.   *See* Dkt. 1101-1 at 13 (citing *Sierra Club v. Meiburg*, 296 F.3d 1021, 1033 (11th Cir. 2002)).

### 3.   The ruling in *AMG* does not constitute exceptional circumstances because it has no bearing on the enforcement of the Contempt Judgment against Defendants.

Defendants fare no better under Rule 60(b)(6).   Defendants appear to base their Rule 60(b)(6) argument on their contention that *AMG* effectuated "a monumental change in the law underpinning" the Contempt Judgment, and that "everything that flowed from the FTC's initial pleading—including entry of the $15.9 Million Judgment and the $40 Million Judgment—was premised on an incorrect interpretation of the FTC Act." (Dkt. 1101-1 at 18, 20-21).

To the extent that Defendants' argument is that the injunctive provisions of the 2008 Judgment are void post-*AMG*, the argument is simply contrary to the Supreme Court's *AMG* decision.   In *AMG*, the Supreme Court reaffirmed that "Section 13(b) of the Federal Trade Commission Act authorizes the Commission

to obtain, 'in proper cases,' a 'permanent injunction' in federal court against 'any person, partnership, or corporation' that it believes 'is violating, or is about to violate, any provision of law' that the Commission enforces."   141 S. Ct. at 1344 (quoting 15 U.S.C. § 53).   The Contempt Judgment "flowed from" Defendants' violations of this Court's lawfully issued injunctions.

Nor does the Supreme Court's ruling regarding the availability of monetary relief in a Section 13(b) action justify the relief Defendants seek.   As this Court has recognized, Rule 60(b)(6) "is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances, and that, absent such relief, an extreme and unexpected hardship will result."   (Dkt. 720 at 3 (quoting *Rease v. AT&T Corp.*, 358 F. App'x (11th Cir. 2009)).   "Even then, whether to grant the requested relief is . . . a matter for the district court's sound discretion."   *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1317 (11th Cir. 2000) (quoting *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996)).   Notably, "a change of law alone does not provide grounds for Rule 60(b)(6) relief."   *Ramsey v. Walker*, 304 F. App'x 827, 829 (11th Cir. 2008).   Here, Defendants offer nothing more than an (irrelevant) change in law and, in any event, fall well short of a showing of "exceptional circumstances" and "extreme and unexpected hardship" sufficient to meet its heavy burden under Rule 60(b)(6).

10

Critically – and fatally to Defendants' argument - the Supreme Court's ruling in *AMG* is irrelevant to this Court's authority to impose compensatory contempt sanctions.   Specifically, in *AMG*, the Supreme Court held that Section 13(b) of the FTC Act does not give courts the authority "to award[] equitable monetary relief such as restitution or disgorgement."   141 S. Ct. at 1344.   Here, the Court did not issue the Contempt Judgment pursuant to Section 13(b), or any other section, of the FTC Act, but instead pursuant to its own contempt authority.

The Court's contempt authority is derived from its "inherent power to enforce compliance with [its] orders," *Shillitani v. United States*, 384 U.S. 364, 369 (1966), not from the underlying statute upon which the FTC relied in 2008.   The Supreme Court has addressed this very distinction, holding:

> We have no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree.   We can lay to one side the question whether the Administrator, when suing to restrain violations of the Act, is entitled to a decree of restitution for unpaid wages. *Cf. Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).   We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree.   The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief.

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949).[7]   In *AMG*, the Supreme Court did not so much as suggest, let alone hold, that its decision has any bearing on this long-standing precedent.   141 S. Ct. 1341 (2021).[8]   Indeed, courts considering the potential implications of the *AMG* decision have recognized that the Supreme Court's decision would not impair their ability to impose compensatory sanctions to remedy order violations.   *See, e.g., FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2020 U.S. Dist. LEXIS 226584, at *11-12 (D. Ariz. Dec. 3, 2020) ("[T]he FTC may still seek monetary relief through the contempt action, regardless of the outcome [of *AMG*]."); *In re Sanctuary Belize Litig.*, 2021 WL 1117763, at *1–2 (D. Md. Mar. 24, 2021) ("[T]his Court's findings of fact and determinations as to liability—including contempt of court . . . would not be affected by a decision in AMG.").

### B.   Defendants have stated no legal basis for an "accounting."

Defendants also seek an "accounting" of both the 2008 Judgment and the Contempt Judgment.   Although the FTC, of course, will provide whatever information the Court requests, there is no legal authority for Defendants'

---

[7]  The Eleventh Circuit opinion affirming the Contempt Judgment relied extensively on *McComb*.   (Dkt. 995 at 12).

[8]  Defendants repeatedly use quotes around the term "compensatory sanctions" in an effort perhaps to suggest that the term was used in the *AMG* opinion.   It was not.

demand.   Moreover, many of the "facts" Defendants cite to support their request, and to malign the FTC's redress program, are simply false.

Defendants cite no case, statute, or rule that requires the relief they seek — because there is none.[9]   It is unclear what the Defendants hope to accomplish with this "accounting" other than to challenge the distribution of funds — an action the 2008 Judgment explicitly bars them from taking.   *See supra* at 3.

While Defendants' accounting request is obviously baseless, it is important to note Defendants falsely claim that the FTC waited five years from the time it finished collecting on the 2008 Judgment to "begin issuing checks" to defrauded consumers.   (Dkt. 1101-1 at 21).   The FTC corrected this blatant falsehood in its previous brief (Dkt. 1097 at 11), but Defendants seem intent on repeating it to the Court here (Dkt. 1101-1 at 26).   The FTC sent the first round of redress checks in August 2012, *before* it even finished collecting.[10]   Notably, the delay in sending

---

[9] The Court has noted Defendants could submit a Freedom of Information Act request to obtain the accounting they seek.   (Dkt. 400 at 33).

[10] *See* FTC Sending Refund Checks Totaling More Than $8.5 Million to Consumers Defrauded by Misleading Claims for Dietary Supplements, *available at* https://www.ftc.gov/news-events/press-releases/2020/05/ftc-sending-refund-checks-totaling-more-85-million-consumers; FTC Refunds $6 Million to Consumers Who Bought Deceptively Advertised Supplements that Were Supposed to Cause Weight Loss and Treat Erectile Dysfunction, *available at* https://www.ftc.gov/news-events/press-releases/2012/08/ftc-refunds-6-million-consumers-who-bought-deceptively-advertised.   Though irrelevant to

redress checks was due to Defendants' well-documented efforts to frustrate the

FTC's collection work.[11]   In fact, the FTC had to find, track, and garnish accounts

throughout 2013, 2014, and most of 2015, before it could fully collect the 2008

Judgment.   (Dkt. 826).   Defendants' attempt to malign the FTC's diligent

collection efforts based on their own tactics to avoid paying the Court's judgment

is simply disingenuous.

Moreover, to date, Defendants have not voluntarily paid a cent of the

October 2017 Contempt Judgment.   Rather, the FTC has successfully garnished

$2,291,087.97.   (*See* unnumbered docket entries dated Jan. 14, 2020; Sept. 29,

2020; and Oct. 21, 2020).   The Court ordered these funds deposited in the

Registry of the Court, where they currently remain (Dkt. 1050, 1093, 1094).

Because sending checks costs money, and because consumers are more likely to

cash larger checks, redress requires adequate funding.   Therefore, once the FTC

locates more of Defendants' hidden assets, it will seek permission from the Court

---

the resolution of this motion, consumers have cashed over $11.5 million in
redress checks sent out by the FTC.   The FTC is in the process of reissuing
uncashed checks to updated addresses.

[11] The Court agreed that any "delay in implementing the consumer redress
program is understandable considering the defendants' lack of cooperation in
collection of the funds to redress consumers." (Dkt. 720 at 2).

to issue redress to consumers harmed by Defendants' order violations.[12]

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court

deny Defendants' Motion for Relief from a Judgment and for An Accounting.

---

[12] Defendants continue to mischaracterize the publicly available redress data to falsely claim the FTC only provided consumers with redress at a rate of 3.3% in 2012 and 2% in 2020.   (Dkt. 1101-1 at 14 and 16).   In fact, FTC's redress program returns the vast majority of equitable monetary relief the agency receives to consumers.   Easily accessible public data shows, on average, between 2016 and 2020, the FTC sent 94.6% of disbursed funds to consumers, disgorged 2.1% of funds to the U.S. Treasury, and used 3.3% for administrative costs of the redress program.   *See* FTC Refunds to Consumers, *available at* https://www.ftc.gov/enforcement/cases-proceedings/refunds/data-refunds-consumers (last accessed May 21, 2021).

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the foregoing document has been

prepared with one of the font and point selections (Book Antigua, 13 point)

approved by the Court in local rules 5.1(C) and 7.1(D).


Respectfully submitted,

/s/ Crystal D. Ostrum

Dated: 5/26/2021      CRYSTAL D. OSTRUM
EVAN M. MENDELSON
costrum@ftc.gov, emendelson@ftc.gov
*Counsel for Plaintiff the Federal Trade
Commission*
FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, NW
Mailstop CC-9528
Washington, DC   20580
Telephone: (202) 326-3405 (Ostrum), -3320
(Mendelson)
Fax: (202) 326-3197


Dated: 5/26/2021      s/ Anna M. Burns
ANNA M. BURNS
Georgia Bar #558234
*Counsel for Plaintiff the Federal Trade
Commission*
Federal Trade Commission
225 Peachtree Street, NE, Suite 1500
Atlanta, GA 30303
Telephone: (404) 656-1350
Email: aburns@ftc.gov

16