## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 1:04-CV-3294-CAP |
| | ) | |
| NATIONAL UROLOGICAL GROUP, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS HI-TECH PHARMACEUTICALS, INC., JARED WHEAT, AND STEPHEN SMITH'S MOTION FOR RELIEF FROM A JUDGMENT AND FOR AN ACCOUNTING

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ............................................................. 1

ARGUMENT .......................................................................................... 4

     I.     The Court Should Exercise Its Inherent Equitable Power to Order a Stay of All Garnishment and Collection Efforts by the FTC .................................................................................................. 4

          A.     Defendants Are Entitled to Relief Pursuant to Rule 60(b)(5) ................................................................................ 5

          B.     Defendants Are Entitled to Relief Pursuant to Rule 60(b)(6) ................................................................................ 8

     II.    The Court Should Order the FTC to Provide and Accounting ........... 10

CONCLUSION ....................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
   741 F.3d 1349 (11th Cir. 2014) ...........................................................................4

*AMG Capital Management, LLC v. FTC*,
   141 S. Ct. 1341 (2021) ...............................................................*passim*

*Fackelman v. Bell*,
   564 F.2d 734 (5th Cir. 1977) .........................................................................8

*Florida Wildlife Federation Inc. v. Administrator, U.S. Environmental
   Protection Agency*,
   602 F. App'x 705 (11th Cir. 2015) ...........................................................7

*FTC v. Cardiff*,
   No. 18-cv-2104 (C.D. Cal. May 24, 2021) ...............................................10

*FTC v. Garden of Life, Inc.*,
   No. 06-cv-80226, 2012 WL 1898607 (S.D. Fla. May 25, 2012) ......................7

*FTC v. National Urological Group, Inc.*,
   645 F. Supp. 2d 1167 (N.D. Ga. 2008) ...............................................11

*FTC v. Noland*,
   No. 20-cv-47, 2020 WL 7075241 (D. Ariz. Dec. 3, 2020) .................................9

*FTC v. Noland*,
   No. 20-cv-47, 2021 WL 2187021 (D. Ariz. May 28, 2021) ...............................10

*Griffin v. Secretary, Florida Department of Corrections*,
   787 F.3d 1086 (11th Cir. 2015) ...........................................................7

*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*,
   527 U.S. 308 (1999) .........................................................................5

*Martin v. H.M.B. Const. Co.*,
   279 F.2d 495 (5th Cir. 1960) .........................................................................8

*Missouri, K. & T. Ry. Co. of Kansas v. Hickman*,
    183 U.S. 53 (1901) ...........................................................................11

*Ramsey v. Walker*,
    304 F. App'x 827 (11th Cir. 2008) .....................................................8

*Ritter v. Smith*,
    811 F.2d 1398 (11th Cir. 1987) .......................................................8, 9

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992) ...........................................................................7

*In re Sanctuary Belize Litig.*,
    --- F. Supp. 3d ----, 2021 WL 1117763 (D. Md. Mar. 24, 2021) ......10

*Shillitani v. United States*,
    384 U.S. 364 (1966) .........................................................................11

*United States v. Eyler*,
    778 F. Supp. 1553 (M.D. Fla. 1991) ...............................................5, 6

**Statutes**

FTC Act Section 13(b) ...........................................................2, 6, 7, 9, 11

**Federal Rules of Civil Procedure**

Rule 60(b) ........................................................................................4, 8

Rule 60(b)(5) ...........................................................................4, 5, 6, 7, 14

Rule 60(b)(6) ..................................................................................8, 14

## PRELIMINARY STATEMENT

Make no mistake, the Federal Trade Commission ("FTC") wants this Court to know that it does not like Defendants Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), Jared Wheat, and Stephen Smith (collectively, "Defendants"). To the FTC, Defendants are bad actors, undeserving of a neutral and unbiased application of fundamental principles of equity. This much is clear from the FTC's brief opposing Defendants' motion for relief from the October 10, 2017, $40,000,950.00 Final Judgment (the "$40 Million Judgment") (Doc No. 966), and for an accounting of the $40 Million Judgment and the December 16, 2008, $15,882,436.00 Final Judgment and Permanent Injunction (the "$15.9 Million Judgment") (Doc. No. 230). Unfortunately for the FTC, that is not the standard this Court must apply in deciding whether Defendants are entitled to the relief sought, and the Court should not be swayed by the FTC's obvious disdain for its adversaries. Indeed, when the FTC's invective and hyperbole are stripped away, all the Court is left with is opposition to arguments Defendants never made, and a desperate and misleading attempt to avoid the effect of recent Supreme Court precedent. *See AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341 (2021).

Beginning with the FTC's opening salvo that Defendants have "failed to offer *any reason* why applying the [$40 Million Judgment] 'is no longer equitable,'" *see* FTC Br. at 1 (Doc. No. 1102) (emphasis added), the FTC's opposition is shockingly

dishonest and bears little relation to the arguments actually asserted by Defendants in support of their motion. In reality, Defendants spent the entirety of their moving papers explaining why, given *AMG Capital*, it is no longer equitable to apply the $40 Million Judgment against them, particularly in light of systemic problems with the FTC's consumer redress programs. *See*, *e.g.*, Def. Br. at 2 ("…the FTC's 'consumer redress' regime is plagued by inexplicable delays resulting in the FTC's failure to ensure that the monies taken from Defendants are actually returned to consumers.") (Doc. No. 1101-1); *id.* at 4 ("Thanks to *AMG Capital*, we now know for certain that the FTC never had a right under Section 13(b) to take Defendants' money in the first place."); *id.* at 16 ("…the Supreme Court's decision in *AMG Capital* is dispositive—equitably, the FTC cannot continue to collect over $40 million to which it was never entitled in the first place."). Equity is the entire basis for Defendants' motion.

Moreover, Defendants have never argued that *AMG Capital* should be given retroactive application by this Court. If they had, Defendants would be asking for a return of over $18 million from the FTC, *i.e.*, a return of all funds collected in complete satisfaction of the $15.9 Million Judgment and all funds collected to date in partial satisfaction of the $40 Million Judgment. Rather, Defendants are arguing that, in light of *AMG Capital*, it is no longer equitable for the $40 Million Judgment to be applied prospectively, and are thus asking the Court to relieve Defendants from

2

any further garnishment efforts by the FTC in satisfaction of this Judgment. In addition, Defendants are asking the Court to take any funds that were collected in satisfaction of the $15.9 Million Judgment but that remain unclaimed by consumers, and use those monies to issue redress to consumers who were supposed to benefit from the $40 Million Judgment. Simply put, Defendants are asking the Court to put an end to the charade whereby the FTC can indefinitely hold on to money fully collected ***nearly six years ago*** under the absurd pretense that it is still trying to locate consumers to whom to issue redress. The FTC fails entirely to grapple with this argument, and attempts instead to distract the Court with the "retroactivity" strawman.

In addition, the FTC persists in the bad faith argument that this Court does not have the authority to order the agency to provide an accounting of all monies garnished pursuant to the $15.9 Million Judgment and the $40 Million Judgment. While the FTC now acknowledges that it will "of course … provide whatever information the Court requests," *see* FTC Br. at 12 (Doc. No. 1102), the FTC is still, in effect, arguing that this Court does not have the authority to enforce or modify its own Orders. This position is absurd on its face, and is contradicted not only by the relevant law but by the FTC's own arguments as they relate to the Court's inherent power to enforce its Orders against Defendants.

For these reasons and those set forth more fully herein and in Defendants'
moving papers, Defendants' motion for relief from the $40 Million Judgment and
for an accounting of monies already garnished should be granted in full.

## ARGUMENT

### I. The Court Should Exercise Its Inherent Equitable Power to Order a Stay of All Garnishment and Collection Efforts by the FTC.

The FTC attempts to rewrite Defendants' motion by claiming that "Supreme
Court rulings only have so-called 'retroactive effect' on 'cases still open on direct
review.'" FTC Br. at 6 (Doc. No. 1102) (citations omitted). Defendants do not
dispute this principle. However, it is not relevant to Defendants' motion, because
Defendants are not asking the Court to apply *AMG Capital* retroactively. Instead,
Defendants are arguing that the FTC's efforts to garnish the $40 Million Judgment
should be ordered to a halt because under *AMG Capital*, the FTC was never entitled
to seek "disgorgement of gross receipts" from Defendants in the first instance.

Federal Rules of Civil Procedure 60(b)(5) and (6) provide for relief from a
judgment when "applying [the judgment] prospectively is no longer equitable" or
for "any other reason that justifies relief." These Rules demand that the Court
balance "the desire to preserve the finality of judgment and the 'incessant command
of the court's conscience that justice be done in light of all the facts.'" *Aldana v. Del
Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1355 (11th Cir. 2014) (citations
omitted). Rule 60(b) explicitly concerns the authority of federal courts to order

4

equitable remedies. *See also Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999) ("The Judiciary Act of 1789 conferred on the federal courts jurisdiction over 'all suits … in equity' … [T]he substantive prerequisites for obtaining an equitable remedy … depend on traditional principles of equity jurisdiction.") (Scalia, J.). Moreover, when the FTC filed suit against Defendants in 2004, it styled its Complaint as one for "permanent injunction and other equitable relief." *See* Complaint (Doc. No. 1). The FTC cannot now complain that Defendants are asking the Court to order an equitable remedy, particularly when ordering relief from a judgment grounded in a weighing of the equities is explicitly provided for by the Federal Rules of Civil Procedure.

### A.    Defendants Are Entitled to Relief Pursuant to Rule 60(b)(5).

The FTC cites, *inter alia*, *United States v. Eyler*, 778 F. Supp. 1553, 1557 (M.D. Fla. 1991) for the proposition that, even under Rule 60(b)(5), "'judgments awarding current monetary damages for past wrongdoing … are properly considered retroactive' and not eligible for Rule 60(b)(5) relief." *See* FTC Br. at 9 (Doc. No. 1102). The FTC's reliance on *Eyler* is misplaced. In *Eyler*, the court made clear that multiple considerations went into its determination that the defendant was not eligible for relief from a judgment pursuant to Rule 60(b)(5). Namely, the *Eyler* court considered four distinct factors—none dispositive on its own—in determining whether to apply Rule 60(b)(5) to a defendant's motion to vacate a judgment on a

consent decree *he had signed*, only one of which was whether "judgments awarding current monetary damages for past wrongdoing" were, in effect, being applied retroactively or prospectively. *See Eyler*, 778 F. Supp. at 1556-57. The *Eyler* court also emphasized that the "essence of Rule 60(b)(5)" is "what do the equities of the situation require?" *Id.* at 1557. Ultimately the *Eyler* court found no inequity in refusing to vacate a judgment on a consent decree, noting there was no evidence that the defendant was fraudulently induced to agree to same. *Id.* at 1558.

Here, "the equities of the situation" are different and require that the Court afford Defendants relief from the $40 Million Judgment. Unlike in *Eyler*, Defendants certainly did not consent to entry of the $40 Million Judgment. And, as Defendants have noted previously, the FTC's failure to institute Section 5 administrative proceedings and obtain an administrative cease-and-desist order against Defendants before filing suit against them means that "everything that flowed from the FTC's initial pleading—including entry of the $15.9 Million Judgment and the $40 Million Judgment—was premised on an incorrect interpretation of the FTC Act." Def. Br. at 15-16 (Doc. No. 1101-1). In other words, the illegitimacy of the $15.9 Million Judgment necessarily extends to any judgment purporting to enforce it, *i.e.*, the $40 Million Judgment.

The key inquiry here is whether this Court ever actually had the authority to enter the $15.9 Million Judgment. It unquestionably did not. Indeed, the FTC's

assertion that the $40 Million Judgment "'flowed from' Defendants' violations of this Court's lawfully issued injunctions" *see* FTC Br. at 10 (Doc. No. 1102), is incorrect, because the "injunction," *i.e.* the $15.9 Million Judgment, was not "lawfully issued." The $15.9 Million Judgment was entered based on alleged violations of Section 13(b), which the Supreme Court has held does not authorize the FTC to seek, or a court to award, equitable monetary remedies. *See AMG Capital*, 141 S. Ct. at 1352. "After all, Rule 60(b)(5) requires only that the moving party demonstrate 'a significant change … in law.'" *Griffin v. Secretary, Florida Department of Corrections*, 787 F.3d 1086, 1094 (11th Cir. 2015) (citation omitted).

It is hard to conceive of a more "significant change … in law" justifying relief under Rule 60(b)(5) than that created by *AMG Capital*. And again, Defendants are not asking the Court to vacate the $40 Million Judgment wholesale. They are seeking a "modification [of the $40 Million Judgment] suitably tailored to the changed circumstance[s]" resulting from the Supreme Court's *AMG Capital* decision. *See Florida Wildlife Federation Inc. v. Administrator, U.S. Environmental Protection Agency*, 602 F. App'x 705, 707-09 (11th Cir. 2015) (upholding district court order modifying a consent decree where the movant had shown a significant change in facts or law where "the proposed modification [was] suitably tailored to the changed circumstance.") (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992)); *cf. FTC v. Garden of Life, Inc.*, No. 06-cv-80226, 2012 WL 1898607, at *4-

7

6 (S.D. Fla. May 25, 2012) (denying FTC's motion to modify a stipulated final order and permanent injunction where the FTC had only argued that the order had "failed to achieve its intended purpose of protecting consumers from the Defendants' deceptive marketing").

**B.     Defendants Are Entitled to Relief Pursuant to Rule 60(b)(6).**

The FTC's arguments related to Rule 60(b)(6) are similarly unavailing. Rule 60(b)(6) is the "catch-all" and provides for relief from a judgment "for any other reason that justifies relief." *See also Martin v. H.M.B. Const. Co.*, 279 F.2d 495, 496 (5th Cir. 1960) (holding that a district court has the authority to modify a judgment "so as to relieve the defendant … for any reason justifying relief from the operation of the judgment") (citing Rule 60(b)(6)). Importantly, "[t]he Eleventh Circuit has recognized that Rule 60(b) can be used to remedy a mistake in the application of the law." *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir. 1987). It is clear that "[t]he law of this circuit permits a trial judge, in his discretion, to reopen a judgment on the basis of an error of law." *Id.* (quoting *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977)).

The FTC protests that "a change of law alone does not provide grounds for Rule 60(b)(6) relief." FTC Br. at 10 (Doc. No. 1102) (citing *Ramsey v. Walker*, 304 F. App'x 827, 829 (11th Cir. 2008)). The FTC fails, however, to set forth the full test. First, the change in the law must be "clear-cut." *Ritter*, 811 F.2d at 1401. Here,

the change in the law could not be more "clear-cut." The $15.9 Million Judgment was entered by the court based on Defendants' alleged violations of Section 13(b) of the FTC Act and represented disgorgement of Defendants' gross receipts, and the $40 Million Judgment flowed directly from alleged violations of the $15.9 Million Judgment. There can be no debate that this Court never had authority to enter the $15.9 Million Judgment in the first instance. *See AMG Capital*, 141 S. Ct. at 1344 (holding that Section 13(b) does not authorize the FTC to seek, and a court to award, equitable monetary relief such as restitution or disgorgement.). In addition, "[a] significant factor … is the fact that the previous, erroneous judgment of this court had not been executed." *Ritter*, 811 F.2d at 1401. "When a judgment has been executed a concomitantly greater interest in finality exists." *Id.*  Here, the $40 Million Judgment has not been fully executed. On the contrary, execution of the Judgment is in its early stages, with over $39 million remaining uncollected. *See* Def. Br. at 2 (Doc. No. 1101-1). Indeed, "it would be unjust to give prospective effect to a judgment now known to be improper." *Ritter*, 811 F.2d at 1402.

The FTC also cites non-precedential district court decisions issued ***prior to AMG Capital being decided*** for the proposition that "the Supreme Court's decision would not impair [the district courts'] ability to impose compensatory sanctions to remedy order violations." *See* FTC Br. at 12 (Doc. No. 1102) (citing *FTC v. Noland*, No. 20-cv-47, 2020 WL 7075241, at *4 (D. Ariz. Dec. 3, 2020) (denying motion to

stay pending *AMG Capital*); *In re Sanctuary Belize Litig.*, --- F. Supp. 3d ----, 2021 WL 1117763, at *1-2 (D. Md. Mar. 24, 2021) (same)). Of course, what another district court predicted about the impact *AMG Capital* would have on future litigation is irrelevant to Defendants' motion, and certainly has no bearing on this Court's decision relative to Defendants' requested relief.[1] The fact remains that the $15.9 Million Judgment should never have been entered in the first instance. *AMG Capital* is dispositive on this point, which the FTC cannot in good faith dispute. As such, the only equitable course of action now is for the Court to order a cessation of all of the FTC's garnishment activity, and a re-allocation of already-garnished but unclaimed funds to ensure that any remaining moneys being held by the FTC are distributed to consumers, with any balance thereafter returned to Defendants.

## II.     The Court Should Order the FTC to Provide an Accounting.

Finally, the FTC argues that this Court does not have the authority to order an accounting of the funds garnished in satisfaction of the $15.9 Million Judgment and the $40 Million Judgment. *See* FTC Br. at 12-15 (Doc. No. 1102). This is not a serious argument. As the FTC itself argued elsewhere, the Court has the "inherent

---

[1] In fact, in light of *AMG Capital*, the *Noland* court is now awaiting full briefing on the legality of a receivership and a freeze of the defendant's assets. *See FTC v. Noland*, No. 20-cv-47, 2021 WL 2187021, at *1 n.1 (D. Ariz. May 28, 2021); *see also FTC v. Cardiff*, No. 18-cv-2104 (C.D. Cal. May 24, 2021) (Doc. No. 598) (ordering the FTC to pay all of a receiver's fees incurred after *AMG Capital* was decided).

power to enforce compliance with [its] orders." *Id.* at 11 (citing *Shillitani v. United States*, 384 U.S. 364, 369 (1966)). In its Order accompanying the $40 Million Judgment, the Court found that it had wide discretion in fashioning equitable remedies. *See* $40 Million Judgment at 128 n.32 (Doc. No. 966). In fact, this Court had earlier held that, when entering an injunction pursuant to Section 13(b) of the FTC Act, "the full range of equitable remedies" was available to it. *See FTC v. National Urological Group, Inc.*, 645 F. Supp. 2d 1167, 1211 n.27 (N.D. Ga. 2008) (citations omitted). While it is now undisputed that these "equitable remedies" do not include "equitable monetary relief," *see AMG Capital*, 141 S. Ct. at 1344, the corollary is that once the Court fashions an equitable remedy, it has the authority to ensure compliance with its Order. *See also Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 61 (1901) ("it is familiar that a court of equity may enforce compliance with its orders and decrees").

Moreover, the FTC has tacitly admitted that it took more than five years for $8.5 million in "refund checks" to be issued to consumers after the $15.9 Million Judgment had been fully satisfied. *See* FTC Br. at 13-14 (Doc. No. 1102). However, the FTC offered absolutely no explanation for this substantial delay. In addition, the FTC claims that of the $15.9 million garnished, $11.5 million in checks have been cashed by consumers. *See* FTC Br. at 14 n.10 (Doc. No. 1102). Importantly, though, the citations in support of this claim—two FTC press releases, one from 2012 and

11

one from 2020—make absolutely no mention of how many checks had been cashed or deposited. They merely state how many checks had allegedly been distributed by the FTC. As Defendants explained in their moving papers, there were doubtless many checks that went stale or were otherwise returned to the FTC. The FTC has not even attempted to dispute this. In fact, the FTC admits that some checks have gone uncashed. *See id.* The FTC provides absolutely no proof—no sworn affidavits or official agency records, for example—in support of the claim that $11.5 million of the $15.9 Million Judgment is now in the hands of consumers. Yet, even if the FTC's unverified figures are to be believed, they beg the question—where is the remaining $4.4 million? The FTC has failed to explain why this money should simply revert to the U.S. Treasury.

Relatedly, the FTC offers no reason why it cannot take unclaimed funds already collected from Defendants and use them to pay consumers who are supposed to benefit from the unsatisfied $40 Million Judgment. As the FTC acknowledges, the $15.9 Million Judgment was never intended to be a "fine, penalty, or punitive assessment." *See* FTC Br. at 3 n.1 (Doc. No. 1102) (quoting the $15.9 Million Judgment at 19 (Doc. 230)). However, when the government retains funds taken from Defendants without paying those funds to the consumers for whom those funds were intended, it ensures that the "compensatory sanction" against Defendants is in fact operating as a "punitive assessment."

Defendants have been convicted of no crime, nor are they the subject of a civil forfeiture action before this Court. This is and was a case about equity, and allowing the FTC to retain funds taken from Defendants—which were intended to benefit consumers—is not equitable. This is particularly true when, as here, the FTC had no right to take Defendants' money in the first place. The FTC knows it, and this Court knows it, which is why the FTC was ordered specifically to "use these funds to reimburse consumers who purchased these products…" $40 Million Judgment at 130 (Doc. No. 966).[2] Defendants understand that, notwithstanding *AMG Capital*, the FTC has already collected over $18 million from them. For practical as well as equitable reasons, Defendants are not asking for all of this money to be returned. At the very least, though, the Court should follow through on its admonition to the FTC and ensure that consumer redress was the primary focus of the FTC's enforcement efforts before *AMG Capital* was decided.

The FTC clearly does not want any transparency in the administration of its "consumer redress" program. It seems the FTC's real concern is that it does not want to explicitly admit to the Court what is obvious from the parties' submissions and a

---

[2] In addition, the FTC's argument that taking unclaimed funds already collected from Defendants and using them to pay consumers who are supposed to benefit from the unsatisfied $40 Million Judgment "would perversely incentivize [Defendants] to take steps to frustrate the Commission's collections and redress efforts," FTC Br. at 4 n.3 (Doc. No. 1102), is nonsensical. It would actually further the FTC's redress efforts. What it would not do is permit the unclaimed funds to revert to the U.S. Treasury, in violation of this Court's command.

review of the public record, *i.e.*, that the FTC routinely delays issuing refund checks for years without explanation and then retains vast sums of money that never get into the hands of consumers. Indeed, this should concern the FTC—and the Court—because such a "consumer redress" program does not actually serve to remedy the harms allegedly inflicted on consumers. And of course, it bears repeating that the FTC should never have been in the business of "consumer redress" at all as it relates to Defendants, since it failed to institute Section 5 proceedings before suing them in this Court.

In light of the obvious issues with the FTC's consumer redress program, and in particular the manner in which the FTC has distributed disgorged funds in this case to date, as well as the FTC's lack of authority to obtain "equitable monetary relief" from Defendants *ab initio*, there is simply no compelling reason why the FTC should not have to account for the funds garnished pursuant to the $15.9 Million Judgment and the $40 Million Judgment.

## CONCLUSION

For the reasons set forth above and in Defendants' moving papers, Defendants respectfully request that the Court grant their motion, pursuant to Federal Rules of Civil Procedure 60(b)(5) and (6), and order that the FTC cease all collection and garnishment activities related to the $40 Million Judgment, and order the FTC to

produce an accounting of all funds collected related to the $15.9 Million Judgment
and the $40 Million Judgment.

Respectfully submitted,

*/s/ Arthur W. Leach*
Law Office of Arthur W. Leach
5780 Windward Parkway, Suite 225
Alpharetta, Georgia 30005
(404) 786-6443
art@arthurleach.com
Georgia Bar No. 442025
Counsel for Hi-Tech and Jared Wheat

*/s/ Jack Wenik*
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, New Jersey 07102
(973) 639-5221
jwenik@ebglaw.com
Admitted *pro hac vice*
Counsel for Hi-Tech and Jared Wheat

*/s/ E. Vaughn Dunnigan*
Law Office of E. Vaughn Dunnigan
2897 N. Druid Hills Rd., Suite 142
Atlanta, Georgia 30329
evdunnigan@hotmail.com
Georgia Bar No. 234350
Counsel for Stephen Smith

Dated: June 9, 2021

## <u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1(D)</u>

Pursuant to Local Rule 7.1(D), I hereby certify that this reply brief was

prepared in Microsoft Word using Times New Roman 14 point font.

<u>*/s/Jack Wenik*</u>
Jack Wenik

Dated: June 9, 2021

16