UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:04-CV-3294-CAP |
| NATIONAL UROLOGICAL GROUP, INC., et al., | |
| Defendants. | |

**O R D E R**

This matter is before the court on the motion for relief from judgment and for an accounting filed by the defendants Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech"), Jared Wheat, and Stephen Smith. [Doc. No. 1101]. The Federal Trade Commission ("FTC") has filed a response in opposition [Doc. No. 1102], and the defendants have filed a reply brief [Doc. No. 1103]. The matter being fully briefed, it is now ripe for consideration.

I. **Background**

On November 10, 2004, the FTC filed a complaint for permanent injunction and other equitable relief against National Urological Group, Inc., National Institute for Clinical Weight Loss, Inc., Thomasz Holda, Michael Howell, Terrill Mark Wright, M.D., Hi-Tech, Wheat, and Smith. [Doc. No. 1].

The FTC alleged that the defendants were engaged in unlawful practices in connection with the advertising, marketing, and sale of two purported weight loss products (Lipodrene and Thermalean) and one purported erectile dysfunction product (Spontane-ES). The court granted the FTC's motion for summary judgment against National Urological Group, Inc., National Institute for Clinical Weight Loss, Inc., Thomasz Holda, Terrill Mark Wright, M.D., Hi-Tech, Wheat, and Smith, awarding both monetary and injunctive relief. [Doc. No. 219].[1] On December 16, 2008, final judgment was entered against these defendants (the "2008 Judgment and Permanent Injunction"). [Doc. No. 230]. In addition to an injunction, the judgment awarded $15,882,436 to the FTC for consumer redress. The defendants appealed the judgment. [Doc. No. 242]. On March 5, 2010, the Eleventh Circuit Court of Appeals ("Eleventh Circuit") affirmed the judgment of this court. [Doc. No. 277].

On May 31, 2012, the court directed Hi-Tech, Wheat, and Smith to show cause why they should not be held in civil contempt for failing to comply with the 2008 Judgment and Permanent Injunction. [Doc. No. 399]. The

---

[1] A Stipulated Final Order for Permanent Injunction and Settlement of Claims For Monetary Relief against Howell was entered on June 1, 2005. [Doc. No. 71].

court held two bench trials and subsequently issued a 132-page order holding Hi-Tech, Wheat, and Smith in contempt of Sections II, VI, and VII of the 2008 Judgment and Permanent Injunction. The court determined that the defendants had violated the injunction by continuing to make representations about four weight-loss products (Fastin, Stimerex-ES, Benzedrine, and a reformulated version of Lipodrene) through a national advertising campaign that lacked adequate substantiation.[2] The court ordered disgorgement of $40,120,950 as compensatory sanctions. Hi-Tech, Wheat, and Smith were jointly and severally liable for $40,000,950, and Wright was liable for $120,000. [Doc. No. 966 at 132]. On October 31, 2017, final judgment was entered in the amount of $40,000,950.00 plus post-judgment interest at the rate of 1.42% per annum against Hi-Tech, Wheat, and Smith (the "2017 Contempt Judgment"). [Doc. No. 969]. Hi-Tech, Wheat, and Smith appealed the judgment. [Doc. No. 979]. The order of contempt and the entry of sanctions was affirmed by the Eleventh Circuit on September 18, 2019. [Doc. No. 995]. The Supreme Court denied certiorari on November 2, 2020. [Doc. No. 1095].

---

[2] The order also held Wright in contempt for violating Section II of a separate final judgment and injunction. The court determined that he had violated the injunction by endorsing Fastin with unsubstantiated claims.

3

Over the years, the FTC has applied for and received numerous writs of continuing garnishment in an effort to collect on the $15 million and $40 million owed by the defendants on these two judgments. The defendants have not been forthcoming in making payments towards these judgments. On December 30, 2020, Hi-Tech, Wheat, and Smith moved to stay all garnishment activity related to the 2017 Contempt Judgment and for an accounting of all funds collected related to both the 2017 Contempt Judgment and the 2008 Judgment and Permanent Injunction. [Doc. No. 1096]. After briefing on the motion was completed, but before the court could issue an order, Hi-Tech, Wheat, and Smith withdrew the motion.

On May 13, 2021, Hi-Tech, Wheat, and Smith filed a motion for relief from the 2017 Contempt Judgment and a renewed request for an accounting of the funds collected on both the 2008 Judgment and Permanent Injunction and the 2017 Contempt Judgment. [Doc. No. 1101]. They maintain that, following the Supreme Court's recent ruling in *AMG Capital Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021), it would be inequitable to continue to apply the 2017 Contempt Judgment against them. They aver that the FTC has already collected over $18 million on two judgments that they maintain are now illegitimate. The defendants assert that "[e]quity is the entire basis" for their

4

motion. [Doc. No. 1103 at 6]. They challenge the FTC's consumer redress program and describe it as a charade. [*Id.* at 7].

## II. Analysis

Hi-Tech, Wheat, and Smith (hereinafter collectively "the defendants") have moved for relief pursuant to Federal Rules of Civil Procedure 60(b)(5) and 60(b)(6). They also ask the court to order the FTC to provide an accounting of the funds that have been garnished in this action. The court will address these three requests individually below.

### A. The defendants' request for relief pursuant to Federal Rule of Civil Procedure 60(b)(5)

Rule 60(b)(5) provides that the court may relieve a party from a final judgment when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." The defendants argue that "the equities of the situation . . . require that the Court afford Defendants relief from the $40 Million Judgment." [Doc. No. 1103 at 10]. They maintain that the ruling in *AMG Capital* is "dispositive—equitably, the FTC cannot continue to collect over $40 million to which it was never entitled in the first place." [Doc. No. 1101-1 at 21].

In *AMG Capital*, the Supreme Court ruled that Section 13(b) of the Federal Trade Commission Act does not authorize the FTC to seek, or a court to award, equitable monetary relief such as restitution or disgorgement. The $15.9 million monetary relief included in the 2008 Judgment and Permanent Injunction in this case was issued pursuant to Section 13(b). [Doc. No. 230]. Over $18 million dollars have been collected by the FTC to date in this case, thus the $15.9 million portion of that judgment has been satisfied. The defendants do not seek the return of the entire $15.9 million that has been collected. [Doc. No. 1103 at 6]. They agree with the FTC that the ruling in *AMG Capital* is not retroactive and thus does not apply to the $15.9 million monetary relief in the 2008 Judgment and Permanent Injunction. [*Id.*]. In essence, the defendants' position is that the $40 million 2017 Contempt Judgment "flows from" the imposition of the $15.9 million monetary relief in the 2008 Judgment and Permanent Injunction. Applying *AMG Capital*, the defendants aver that the FTC did not have the authority under Section 13(b) to seek $15.9 million monetary equitable relief, thus it would be inequitable to allow the FTC to continue to collect on the later $40 million 2017 Contempt Judgment.

The defendants contend that they are not seeking to vacate the 2017 Contempt Judgment, but rather to modify it in light of this recent change in

6

the law. [*Id*. at 11]. They want a portion of the collected funds returned to them. They challenge the FTC's consumer redress program and assert that a portion of the collected funds have likely not actually reached the consumers. The defendants want those funds to be "used to compensate consumers who are the intended beneficiaries of the $40 Million Judgment, with the remaining inevitable excess returned to Defendants, along with any of the over $2 million already collected in satisfaction of the $40 Million Judgment that is not distributed." [Doc. No. 1101-1 at 27].

The FTC agrees with the defendants that the $40 million 2017 Contempt Judgment "flows from" the 2008 Judgment and Permanent Injunction, just not in the manner the defendants contend. The FTC maintains that the $40 million 2017 Contempt Judgment is based on the defendants' violations of the injunction included in the 2008 Judgment and Permanent Injunction. According to the FTC, the injunction was obtained pursuant to Section 13(b) of the Federal Trade Commission Act, and *AMG Capital* has no bearing on the injunction portion of the 2008 Judgment and Permanent Injunction. The FTC also avers that Rule 60(b)(5) does not apply here because the $40 million 2017 Contempt Judgment is retroactive rather than prospective as it awards monetary damages for past wrongdoing.

The court agrees.  The Eleventh Circuit has explained that "rule 60(b)(5) applies only to judgments that have prospective effect as contrasted with those that offer a present remedy for a past wrong . . . judgments operate 'prospectively' within the meaning of Rule 60(b)(5) if they involve the supervision of changing conduct or conditions."  *Griffin v. Sec'y, Florida Dept. of Corr.*, 787 F.3d 1086, 1091 (11th Cir. 2015) (internal quotations and citations omitted).  "[T]he standard . . . in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the supervision of changing conduct or conditions.'"  *Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1139 (D.C. Cir. 1988).  Money judgments are not prospective for purposes of Rule 60(b)(5).  *Gibbs v. Maxwell House, A Div. of General Foods Corp.*, 738 F.2d 1153, 1156 (11th Cir. 1984) (ruling "[t]hat plaintiff remains bound by the dismissal is not a 'prospective effect' within the meaning of rule 60(b)(5) any more than if plaintiff were continuing to feel the effects of a money judgment against him."); *Stokors S.A. v. Morrison,* 147 F.3d 759, 762 (8th Cir. 1998) ("conclud[ing] that Rule 60(b)(5)'s equitable leg cannot be used to relieve a party from a money judgment, and hold[ing] that the district court abused its discretion in granting relief to [the defendant] under this provision").

As for the defendants' argument that it is no longer equitable to enforce the 2017 Contempt Judgment against them because there have been delays in implementing the consumer redress program, that too is unavailing. The defendants have raised a similar argument before in this case. In ruling on the defendant's earlier motion for relief pursuant to Rule 60(b)(5), the court found that "the standard for relief pursuant to Rule 60(b)(5)" had not been met. *FTC v. Nat'l Urological Group, Inc.*, No. 1:04-CV-3294-CAP, 2014 WL 12797855, at *1 (N.D. Ga. Aug. 19, 2014). There, the court noted that "the effectiveness of consumer redress efforts diminishes over time. Because of the time it has taken the FTC to collect the funds—more than 5 years—the FTC's ability to use the funds to make affected consumers whole has been impaired." *Id*. It has now been an additional 7 years since those words were written. It is clear from the filings in this case that the FTC continues to actively pursue funds from the defendants, and that the defendants continue to refuse to voluntarily pay on the judgment. On December 10, 2019, alone, the FTC filed 46 separate motions for writs of continuing garnishment. In 2020, almost $1 million was deposited into the court registry as a result of the FTC's garnishment activities. *See* Docket Entries dated Sept. 29, 2020 and October 21, 2020. "The standard for relief under Fed. R. Civ. P. 60(b)(5) is an exacting one and requires a strong showing. The moving party must

9

show that a changed condition requires modification or that the law or facts no longer require enforcement of the order . . . Rule 60(b)(5) is not an opportunity for a party to reargue an issue that has already been argued or present facts which were available for presentation at the time of the original judgment." *Altendorf v. Dodson Int'l Parts, Inc.,* No. 04-4032-JAR, 2004 U.S. Dist. LEXIS 19587, at *9 (D. Kansas Sept. 24, 2004). Again, the standard for relief pursuant to Rule 60(b)(5) has not been met.

### B. The defendants' request for relief pursuant to Federal Rule of Civil Procedure 60(b)(6)

The catchall provision of Rule 60(b) authorizes relief from judgment based on "any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6). The purpose of Rule 60(b) is "to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 743 (11th Cir. 2017) (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Jan. 1981)).

The defendants aver that "it would be unjust to give prospective effect to a judgment now known to be improper." [Doc. No. 1103 at 3, internal quotation omitted]. The defendants argue that "everything that flowed from

10

the FTC's initial pleading – including entry of the $15.9 Million Judgment and the $40 Million Judgment – was premised on an incorrect interpretation of the FTC Act." [Doc. No. 1101-1 at 20-21].  The court is not persuaded by this argument.  The $40 million 2017 Contempt Judgment is a compensatory remedy imposed after the defendants violated the injunction in this case by continuing to make representations through a national advertising campaign about four weight-loss products (Fastin, Stimerex-ES, Benzedrine, and a reformulated version of Lipodrene) that lacked adequate substantiation in violation of Sections II and VII of the injunction.[3]  The Supreme Court's ruling in *AMG Capital* has no bearing on the injunction in this case.  As the Supreme Court remarked, its task in *AMG Capital* was to answer the question "Did Congress, by enacting § 13(b)'s words, 'permanent injunction,' grant the Commission authority to obtain monetary relief directly from courts, thereby effectively bypassing the process set forth in § 5 and § 19 [of the Federal Trade Commission Act]?"  141 S. Ct. 1341, 1347 (2021).  The Court emphasized that the FTC can seek an injunction pursuant to Section

---

[3] The FTC also sought a separate sanction of $34,441,227 for the defendants' violation of Section VI on the injunction.  The court declined to impose this sanction, having determined it would be duplicative because there was an overlap in time in which the defendants violated Sections II, VI, and VII of the injunction.  [Doc. No. 966 at 129].

13 of the Federal Trade Commission Act, even while a parallel administrative procedure is pending. *Id*. at 1349.[4]

Thus, the court does not agree with the defendants that "the Supreme Court's decision in *AMG Capital* is dispositive – equitably, the FTC cannot continue to collect over $40 million to which it was never entitled in the first place." [Doc. No. 1101-21]. Other courts have recognized that *AMG Capital* has no bearing on contempt sanctions based on violations of an injunction. *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2020 WL 7075241, at * 4 (D. Ariz. Dec. 3, 2020) ("the FTC may still seek monetary relief through the contempt action, regardless of the outcome of *AMG Capital*"); *FTC v. Acquinity Interactive, LLC*, No. 14-60166-Civ-Scola, 2021 WL 3603594, at *6 ) (S.D. Fla. Aug. 13, 2021) (finding that the FTC's tactic of seeking monetary relief via civil contempt "in the wake of the *AMG* decision is not an impermissible 'end-run' around a Supreme Court decision"); *In re Sanctuary Belize Litigation*, No. PJM 18-3309, 2021 WL 1117763, at *1 (D. Md. March 24, 2021) (determining that any findings as to contempt liability would not be

---

[4] The Eleventh Circuit has held that disgorgement of gross receipts is an appropriate contempt sanction. *FTC v. Leshin*, 719 F.3d 1227, 1237 (11th Cir. 2013). Indeed, the defendants do not argue that the sanction was inappropriate, and the court's ruling was subsequently affirmed. [Doc. No. 995].

12

affected by the decision in *AMG Capital*). "Rule 60(b)(6) motions must demonstrate "that the circumstances are sufficiently extraordinary to warrant relief. Even then, whether to grant the requested relief is . . . a matter for the district court's sound discretion." *Cano v. Baker*, 435F.3d 1337, 1342 (11th Cir. 2006) (quoting *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1317 (11th Cir. 2000)). The ruling in *AMG Capital* does not constititue an exceptional circumstance for relief under Rule 60(b)(6).

The defendants's complaints about the consumer redress program also do not constitute exceptional circumstances warranting Rule 60(b)(6) relief. As indicated above and in the court's order of August 19, 2014, ruling on a similar argument, "[t]he effectiveness of the consumer redress program has been hindered by the defendants' lack of cooperation. The court finds that the FTC has administered the consumer redress program in a prompt and responsible manner considering the circumstances." *FTC v. Nat'l Urological Group, Inc.*, No. 1:04-CV-3294-CAP, 2014 WL 12797855, at *1 (N.D. Ga. Aug. 19, 2014).

### C. The defendants' request for an accounting of the garnished funds

The defendants seek an accounting of the funds collected on both the 2008 Judgment and Permanent Injunction and the 2017 Contempt

Judgment. They contend that the money collected on these judgments must be returned to consumers, otherwise the judgments function as improper fines or punitive assessments. To that effect, they have repeatedly attacked the consumer redress program, at least as far back as 2012. Indeed, they spend a significant portion of the current motion regurgitating their prior arguments.

The 2008 Judgment and Permanent Injunction prohibits the defendants from challenging how funds collected on the $15 million monetary relief portion of the judgment are distributed or applied. Section IX(D) of the judgment states:

> In the event that the Commission in its sole discretion determines that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to the practices of the Defendants and NICWL [National Institute for Clinical Weight Loss, Inc.], as alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendants and NICWL shall have no right to challenge the Commission's choice of remedies under this Paragraph or the manner of distribution chosen by the Commission. No portion of any payments under the judgment herein shall be deemed a payment of any fine, penalty, or punitive assessment.

[Doc. No. 230 at 18-19]. Thus, it is unclear to the court why the defendants seek an accounting of the garnished funds pertaining to this judgment when

their arguments in doing so suggest they are in fact challenging the choice of remedies and manner of distribution of funds in contravention of the judgment.  Furthermore, the defendants have indicated that they do not seek return of the bulk of the collected funds, and they agree that *AMG Capital* does not apply retroactively to the 2008 Judgment and Permanent Injunction.

The defendants suggest that any undisbursed funds collected toward the judgment should be applied to the 2017 Contempt Judgment, yet Section IX(D) above clearly states that any funds not used for equitable relief shall be deposited in the U.S. treasury as disgorgement.  Also, the consumers who were harmed by the defendants' violations of the 2008 Judgment and Permanent Injunction are not the same consumers who were harmed by the defendants' actions that precipitated this case, as evidenced by the fact that the 2017 Contempt Judgment concerned different products than those referenced in the FTC's complaint and the 2008 Judgment and Permanent Injunction.[5]  Both judgments concern consumer redress.  The defendants have not provided the court with any authority, nor is the court aware of any,

---

[5] One of the four products referenced in the contempt proceedings was a reformulated version of Lipodrene.  Liprodrene was one of the original three products at issue in this case.

that allows for taking the proceeds from one fraud to compensate victims of another fraud.  Doing so would in effect be a bizarre type of Ponzi scheme for payment of judgments.

The parties agree that the $40 million 2017 Contempt Judgment is not close to being satisfied. In their motion, the defendants refer to two motions for garnishment filed by the FTC in May 2020, as well as docket entries reflecting the deposits of garnished funds into the court registry.  The defendants remark that "[a]ccording to the FTC itself, over $39 million of the $40 Million Judgment remains unsatisfied."  [Doc. No. 1101-1 at 7].  For its part, the FTC states that it "has successfully garnished" $2,291,087.97 toward the $40 million 2017 Contempt Judgment.  [Doc. No. 1102 at 14]. Thus, the defendants are aware of how much has been collected and the balance that remains outstanding.  The defendants have provided the court with no legal authority for ordering an accounting.  The court reminds the defendants that they may pursue an avenue outside of this court, such as submitting a Freedom of Information Act request, to obtain an accounting from the FTC.

### III.  Conclusion

For the reasons expounded above, the court DENIES the motion for relief from a judgment and for an accounting filed by the defendants Hi-Tech, Wheat, and Smith.  [Doc. No. 1101].

**SO ORDERED** this 30th day of September, 2021.

/s/CHARLES A. PANNELL, JR.
CHARLES A. PANNELL, JR.
United States District Judge